JOHN M. RUCKER *et al.*, Plaintiffs in Error, *v.* JOHN W. ROBINSON *et al.*, Defendants in Error.

*Securities—Discharge—Extension.*—Where the holder of a note gives, for a valuable consideration, to the principal debtor an extension of the time of payment, but reserves to himself the right to sue whenever required by the securities, the securities are not thereby discharged. To discharge the securities, the creditor must do some act, by which he deprives himself of the right of proceeding at law in the collection of the obligation.

*Error to St. Louis Circuit Court.*

*Napton* and *E. A. Lewis*, for plaintiffs in error.

The authorities have now settled, in reference to the giving of time, that a mere promise of indulgence is not suf-

ficient, that mere delay is not sufficient; that there must be "an act of the creditor depriving himself of the power to sue, by something obligatory, which prevents the surety from coming into a court of equity for relief, because the principal having tied his own hands, the surety cannot release them."

These words are those used by Ch. Jus. Gibbs, in Orme v. Young, Holt's N. P. C. 84, and are copied literally by Judge Story, in Locke v. United States, 3 Mason, 446, and are also copied verbatim by Judge Scott, in the opinion of this court, in Nichols v. Douglass, 8 Mo. 51. In this case of Locke v. United States—which was very like the present, except that the parties sued were sureties on an official bond of a postmaster, and not original obligors in a note, and there was no express reservation of the right to sue, as there was in this case, before the expiration of the extension—Judge Story reviews all the English and American authorities with his customary perspicuity and thorough research, and after quoting the following language of C. J. Gibbs, in Orme v. Young, in addition to what I have before cited: "What is forbearance and giving time? It is an engagement which ties the hands of the creditor," he emphatically asks, in reference to the question before him: "Now where is the contract disabling the Postmaster General, for a moment, from suing the debtor? Where is the incapacity of the surety to come into equity and demand to sue the debtor in the name of the Postmaster General?"—Blackstone Bk. v. Hill, 10 Pick. 129; Claget v. Salmon, 5 Gill & J. 350–5; Globe Mut. Ins. Co. v. Carson, 31 Mo. 218; Ford v. Beard, id. 459; Fulton v. Matthews, 15 Johns. 433 & n. a., p. 434; Hunt v. Knox, 34 Miss. 673; Roberts v. Stewart, 31 Miss. 664; Agr. Bk. v. Bishop, 6 Gray, 317; Oxford Bk. v. Lewis, 8 Pick. 458; 2 Amer. L. C. 157, 159; Brinager v. Phillips, 1 B. Mon. 283; White v. Ault, 19 Geo. 535; Salmon v. Clagett, 3 Bland, 179; Chitty Bills, 203; 1 Saunders Pl. & Ev. 378; 1 Law Libr. 107.

*Cline & Jamieson* and *W. A. Alexander*, for defendants in error.

Indulgence by contract, for a valuable consideration, was given in this case until the principal became insolvent; whereas further time for a definite period, even for a moment, although it occasions no actual injury to the surety, will discharge such surety—2 Amer. L. C. pp. 312, 314; 2 Sto. Eq. § 883; Smith v. Rice, 27 Mo. 505. Nearly every question in this case was fully discussed and passed upon by the Supreme Court, in the case of Garret et al. v. Ferguson's Adm'r, 9 Mo. 124 — Martin v. Rice, 24 Mo. 581; Smith v. Rice, 27 Mo. 505; Ford v. Beard, 31 Mo. 461; 12 Wheat. 557; 6 Pet. 250.

WAGNER, Judge, delivered the opinion of the court.

This was a suit instituted in the St. Charles Circuit Court, (and taken, by change of venue, to the Circuit Court of St. Louis county,) by plaintiffs against the defendants, Robinson, McDonald, Griffith and Overall, on a promissory note for the sum of four thousand dollars. The note was originally given to George Myers, as payee and holder, and bequeathed by him in his last will to his daughter Sarah A., a minor, who afterwards intermarried with John M. Rucker, the plaintiff. Robinson made no answer, and judgment by default was taken against him. McDonald, Griffith and Overall filed their answer, alleging that they were securities on the note for Robinson, and that Myers, in his life-time, and Blanks, his executor, who was also guardian of Sarah A. Myers, and plaintiffs, when they severally had charge and possession of the note, for valuable considerations, by contract and agreement with Robinson, without their consent, indulged and gave time to Robinson, from year to year, until he (Robinson) became insolvent, whereby they claimed that they were discharged.

From the evidence, it appears that when the note became

due, Myers, the obligee, was dead, and it had passed into the hands of Blanks, executor of Myers, who held it two or three years in the capacity of executor, and for about the same length of time as guardian of Sarah A. Myers, and, upon her intermarriage with Rucker, he delivered the note over to plaintiffs. The note was made payable with six per cent. interest, and when it matured, Blanks, the executor, informed Robinson that, as he was not needing the money, he might retain it, provided he would pay him four per cent. additional interest, making the interest amount to ten per cent. instead of six. Robinson paid the interest to the executor and guardian as long as he had possession of the note, and likewise paid one year's interest, at the same rate, to the plaintiffs, after the note had come to their hands. The interest was generally paid at the end of the year on which it fell due, and in one year a note was taken for its payment. The executor, when he made the arrangement with Robinson for giving him indulgence and an extension of time, in consequence of the additional interest being paid, stated that he would not sue upon the note unless compelled to do so by the securities; but he expressly reserved the right to sue at any time, whenever requested to do so by the sureties. Upon this evidence, the jury, under instructions from the court, found a verdict for the defendant.

It is not pretended here that the securities are discharged by means of the statutory provisions in relation to securities, as no notice was ever given by them to the holder or holders of the note to sue. The defence rests purely on legal and equitable principles. It is the doctrine of equity, that the security has the right to pay off the note or obligation of the principal debtor, and be subrogated to the rights of the creditor; and if the creditor has made an agreement which estops him from pursuing his remedy against the debtor, the security is discharged. But the giving of time or indulgence will not have the effect of releasing the security, without the creditor has, by some contract obligatory, tied up his hands, and prevented himself from the privilege of prosecut-

11—VOL. XXXVIII.

ing his right of action. The agreement must not only be upon a sufficient consideration, but it must amount in law to an estoppel on the creditor, sufficient to prevent him from bringing an action before the expiration of the extended time—Nichols v. Douglass, 8 Mo. 49; Ford v. Beard, 31 Mo. 459; Bailey v. Adams, 10 N. H. 162; Joslyn v. Smith, 13 Vt. 353; Farmers' Bk. v. Reynolds, 13 Ohio, 84; Leavit v. Savage, 16 Me. 72. The agreement extending the time must not only be valid and binding in law, but the time of the extension must be precisely and definitely fixed— Miller v. Stem, 2 Pa. St. 286. Where, therefore, the creditor, in extending the time or granting indulgence to the debtor, reserves the right to bring suit at any time, the sureties are not discharged, because they can compel him, on notice, to proceed to the collection of the debt whenever they see fit. By the very terms of the agreement in this case, the creditor is not estopped; his hands are not tied. In Nichols v. Norris, 3 Barn. & Ad. 41, the creditor signed a deed of composition, and thereby agreed to extend the time of payment, and receive payment in instalments. But as he had expressly reserved his right to proceed at any time against the surety, the surety was held not to be discharged. In Melville v. Glendenning, 7 Taunt. 126, the plaintiff received bills of exchange from a defendant, under an agreement that he should not be precluded from prosecuting while the bills were running. It was held that the surety was not thereby discharged. And this seems to be the prevailing doctrine—Oxford Bk. v. Lewis, 8 Pick. 458; Blackstone Bk. v. Hill, 10 Pick. 132; Wyke v. Rogers, 1 De Gex. M. & G. 408; Wayman v. Hoag, 14 Barb. 232; Hubbel v. Carpenter, 1 Seld. 171; Viele v. Hoag, 24 Vt. 46. Now, it is well settled, that a covenant not to sue upon a claim cannot be pleaded to, and presents no bar to an action on the claim; the only remedy of the covenantee being a suit for damages on the covenant or agreement—Atwood v. Lewis, 6 Mo. 392; Bircher v. Payne, 7 Mo. 462; Bridge v. Tierman, 36 Mo. 439. Hence it has been held that an express cove-

Judge v. Judge.

nant not to sue the principal debtor for a certain or prescribed time, will not discharge the surety, because, notwithstanding the agreement, suit may be commenced at any time, and the covenant is no bar, but only gives the covenantee an action for damages—Perkins v. Gilman, 8 Pick. 229; Fullum v. Valentine, 11 Pick. 156. There is nothing in the facts of this case to show that the plaintiffs, or those from whom they received the note, divested themselves of the power to sue at any time. As we have already shown, extension of time or giving indulgence will not release or exonerate the sureties, unless accompanied with some act on the part of the creditor, whereby he deprives himself of the right of proceeding at law in the collection of the obligation. There was nothing here to prohibit the bringing an action to coerce payment, or to prevent the sureties from paying the debt and enforcing their right against the principal.

The judgment is reversed, and the cause remanded.

Judge Holmes concurs; Judge Lovelace absent.