MOSES MORSE *v.* ALFRED H. HUNTINGTON.

*Promissory Note. Principal and Surety. Evidence.*

Where an indorsee of a promissory note takes a mortgage of the maker for better security, a prior indorser, in an action against him on the note by said indorsee, may prove a parol agreement to delay payment made between the parties to the mortgage, and prior thereto, though varying from the terms of the mortgage.

When, in an agreement to delay payment between the last indorsee of a promissory note and the maker, the former makes a reservation which is agreed to by the

Morse *v.* Huntington.

latter, that the indorsers shall not be discharged, but shall have the right to pay the note at any time, and to proceed against the maker for reimbursement, the same as though no agreement to delay had been made, it is *held* that the agreement to delay does not discharge the indorsers, but such reservation must be a part of the agreement.

THIS was an action of assumpsit to recover against the defendant as second indorser to the plaintiff of three promissory notes, dated at Rockford, (Illinois,) July 19th, 1858, one for $2000., and two for $500. each, and all payable at Rockford three years from date, with interest at ten per cent. payable annually, executed by Paris Woolworth to the order of C. A. Huntington, and indorsed by C. A. Huntington, and then by the defendant.

Trial by jury, at the September Term, 1866, PIERPOINT, Ch. J., presiding.

The plaintiff put in evidence, the notes, and gave evidence tending to prove due demand of payment of Woolworth, and notice to the indorsers of non-payment.

The defendant resided at St. Albans, Vermont, which the plaintiff knew, and upon C. A. Huntington's application, the defendant did, there, at St. Albans, indorse the notes after C. A. Huntington's indorsement, and for the mere accommodation of C. A. Huntington, who then returned the notes, thus indorsed, to the plaintiff in Burlington, where the plaintiff paid C. A. Huntington therefor, the purchase price agreed upon.

The plaintiff's evidence tended to prove that, at the time said notes fell due, and ever after, said Woolworth was poor, and that any suit against him would have been unavailing for the collection of said notes. This was not disputed. No suit against Woolworth was brought upon the notes, nor against C. A. Huntington, who was also insolvent, and destitute of property.

The defendant claimed that he was discharged as indorser by an agreement made between the plaintiff and Woolworth, with the assent of C. A. Huntington, at the time of the maturity of the notes; that the plaintiff should give five years further time of payment to Woolworth, in consideration of Woolworth securing the debt by a mortgage of the place on which he lived, the title of which was in his wife, and introduced evidence tending to prove that, at the time of

32

the maturity of said notes, the plaintiff applied to Woolworth for payment at Woolworth's house, situate about one mile from the city of Rockford, but that Woolworth was unable to make payment; that the plaintiff then authorized C. A. Huntington to go to Woolworth and induce him to arrange the debt by giving him time of payment and taking security, telling C. A. Huntington, " you can settle the terms, as regards time, exactly to suit Woolworth's convenience. If I can be secured and get my interest punctually, I am not particular about time ;" that said Huntington, thereupon, went to Woolworth's house and made known to Woolworth and his wife the proposition of the plaintiff, and thereupon, they decided to give a mortgage provided the debt could be divided up into several payments and extended through a series of years so that they could hope to meet them and save their home ; they both agreed with said Huntington that they would give a mortgage of said homestead if the plaintiff would divide the debt into five equal annual payments, the first payment to be due in one year from the date of the mortgage, to include one-fifth of the principal, and the interest of the whole debt at 10 per cent. interest, per annum ; the second payment to be due two years from the date of the mortgage, to include one-fifth of the whole debt, and the annual interest of what remained unpaid, and so on, annually, until the whole should be paid ; and that soon after this, the plaintiff came in, when said C. A. Huntington stated to him the terms of the agreement, as above expressed, and the plaintiff " plainly assented to the agreement ;" and that it was then distinctly agreed between the plaintiff and the Woolworths that the mortgage should be given on the above conditions, and that in default of payment of any one of the installments when due, the right to foreclose the mortgage and collect the whole debt should be secured to the plaintiff; but that if the payments were met, according to the above agreement, the plaintiff was not to enforce said mortgage ; that the several parties then went down into the city of Rockford together, to the law office of one Sheldon, where Woolworth and his wife executed and delivered to the plaintiff, a mortgage of said homestead. There was no other evidence, on the part of the defendant, tending to show what were the terms or conditions of the mortgage then executed,

nor any evidence tending to show that, in point of fact, the form of the debt was, in any way, changed by the making of any new notes, or the execution of any papers except said mortgage, nor that any extension of time of payment was noticed in said mortgage.

The plaintiff's evidence in reply, on this point, tended to prove that he never authorized said C. A. Huntington to make any agreement with Woolworth to delay the payment or collection of said debt, and never agreed with Woolworth or his wife that he would give such delay in consideration of security to be furnished, nor to divide the debt into parcels, as stated above; but that the collection of the debt, at any time, should rest in his own discretion and choice; and that whatever was said on the subject of affording indulgence to Woolworth was coupled with the express condition and understanding that the plaintiff should not discharge the indorsers, but should hold them on their indorsements, and should not agree to delay collection without consent of the defendant; that he so declared to the parties at Sheldon's office on the occasion of the drawing of the said mortgage, to which Woolworth replied, that he did not wish to have anything done to discharge the endorsers, but leave it for the plaintiff to collect his debt whenever he should see fit, and that the mortgage was executed upon that mutual understanding; that no other papers were executed except said mortgage, and that that mortgage was conditioned in terms to secure the said three promissory notes according to their terms, without mentioning any extension of time.

The testimony being closed, the plaintiff asked the court to instruct the jury.

1st. That the defendant could not set up, in defense, any parol agreement, as claimed by him, between the plaintiff and Woolworth, made before the execution of said mortgage, which varies from the terms of said mortgage. The court refused so to charge, but charged the contrary.

2d. That if the jury should find the law of Illinois to be as in chapter 63 of the revised Statutes of Illinois of 1845, and that Woolworth, at the maturity of the notes, and thereafter, was in such circumstances as that a suit against him, for the collection of the notes, would have been wholly unavailing, then, upon the evidence, the

plaintiff is entitled to recover, unless the jury find that the plaintiff agreed with Woolworth, upon consideration of his giving the mortgage, that he, (the plaintiff,) would give further time of payment, *without expressly reserving* his right of holding and proceeding against the indorsers; that if such reservation of his right against the indorsers was made by the plaintiff as a part of the agreement, the defendant was not discharged by the agreement with Woolworth, to give further time of payment.

The court charged the jury, that generally an agreement upon sufficient consideration between the holder and maker, without the consent of the indorser, whereby the time of payment is to be extended beyond the time specified in the note, discharges the indorser. But that if the jury should find that in the present case it was understandingly agreed between Morse and Woolworth, that the indorsers should not be discharged, but should have the right to pay the notes at any time, and to proceed against Woolworth for reimbursement the same as though no agreement to delay had been made, the indorsers would not be discharged, even though the jury should find that Morse did agree to extend the time of payment, as defendant's testimony tended to show he did. But to give it such effect, the jury must find that the reservation of such right was made a part of the agreement between Morse and Woolworth, that it would not be sufficient that Morse determined in his own mind, or in the course of the conversation on the subject said, that he would " hold on to the indorsers," but to give that right, notwithstanding the agreement, it must have been understood and assented to by Woolworth, so as to make that provision a part of the contract between him and Morse.

In all other respects, except as above noted, the court's charge was acceptable to the plaintiff. The jury rendered a verdict for the defendant, and the court rendered judgment thereon.

To the court's omission to charge as requested, and to the charge as given upon the points noted above, the plaintiff excepted.

The claim with reference to the effect of the laws of Illinois upon the case is not discussed in the opinion, therefore the facts pertaining thereto are omitted in this statement.

*Daniel Roberts* and *Jeremiah French*, for the plaintiff.

*Hard & Shaw*, for the defendant.

The opinion of the court was delivered by

WILSON, J. This is an action of assumpsit to recover against the defendant as second indorser to the plaintiff of the three promissory notes mentioned in the plaintiff's declaration. It appears that Woolworth and his wife, on the 22d day of July, 1861, after the notes became due, executed their mortgage deed to the plaintiff of certain real estate, as security for the payment of the notes in question. It is claimed, by the defendant, that he was discharged, as indorser, by an agreement made between the plaintiff and Woolworth, by the assent of C. A. Huntington, at the maturity of the notes, that the plaintiff should give further time of payment to Woolworth, in consideration of Woolworth securing the debt by the aforesaid mortgage. The defendant introduced testimony tending to prove that the plaintiff, at the maturity of the notes, agreed with Woolworth, in consideration that Woolworth and his wife would execute the aforesaid mortgage deed, to divide the debt into five equal annual payments, the first to be due in one year from the date of the mortgage, to include one-fifth of the principal, and the interest of the whole debt; the second to be due in two years from the date of the mortgage, to include one-fifth of the whole debt, and the annual interest on what remained unpaid, and so on, annually, until the whole debt should be paid; that in default of payment of any one of the installments when due, the right to foreclose the mortgage, and collect the whole debt, should be secured to the plaintiff, but if payments were met according to the above agreement, the plaintiff was not to enforce the mortgage, and that these were the terms of the agreement upon which Woolworth and his wife executed the mortgage. This testimony tended to prove a valid agreement made between the plaintiff and Woolworth, to extend the time of payment, and it tended to prove that the consideration of the agreement was fully executed by the delivery to the plaintiff of the mortgage security. It is clear that parol testimony was admissible to prove the terms of the agreement

in question. The defendant became security that the debt should be paid according to the tenor of the notes, and the relation between the parties to the contract of suretiship, required the creditor in all subsequent transactions, in respect to the debt, to act in perfect good faith towards the surety. The defendant, as indorser of the notes, had a material interest in the rights and remedies which the creditor had, under the original contract, against the principal debtor; he is not to be held bound where the circumstances, in respect to the rights and remedies which the creditor has against the principal debtor, are different from that which was contemplated by the engagement of the surety, unless by his consent, or with reservation of his rights against the principal debtor. It is perfectly settled, as a general rule, that the liability of sureties is governed by the same principles, at law, as in equity; and, with few exceptions, the same considerations which are sufficient in equity to discharge the surety, will be available for the same purpose at law. *Viel* v. *Hoag*, 24 Vt. 46; 3 Lead. Cases in equity in notes to *Rees* v. *Berrington*. It is clear and evident in equity, that the defendant had the right to show what was, in fact, agreed upon between the plaintiff and Woolworth, in order that it could be determined whether their agreement was such a departure from that which the defendant stipulated for, and contemplated when he entered into the obligation, as would release him from his liability as surety. The rule, that parol evidence is inadmissible to contradict, vary, or add to a written contract, or to show it different from what it purports to be, is applied in suits between the parties to the instrument, but is not applicable to the facts in this case. The defendant, though interested in the subject matter of the agreement between the plaintiff and Woolworth, was not a party to that agreement; he is not, in any sense, a party to the mortgage, and it cannot conclude him by estoppel or otherwise. The plaintiff and Woolworth, alone, are to blame if the mortgage contains what was not intended, or omits that which it should have contained. It can not affect the defendant, who, if it were otherwise, might be prejudiced by things recited in the mortgage contrary to the truth, through ignorance, carelessness or fraud of the parties to the mortgage, and who, therefore, ought not to be precluded from

proving the truth, however contradictory to, or inconsistent with the written statements of the plaintiff and Woolworth. 2 Stark Ev. 790-1 ; 2 Green Ev. 367.

II.   It is claimed by the plaintiff that the court erred in refusing to charge according to the plaintiff's *second request*, and in the charge given.

The plaintiff requested the court to charge the jury, among other things, " that, *upon the evidence*, the plaintiff is entitled to recover, unless the jury find that the plaintiff agreed with Woolworth, upon consideration of his giving the mortgage, that he (the plaintiff) would give further time of payment, *without expressly reserving his right* of holding and proceeding against the endorsers ; that if such reservation of his right against the endorsers was made by the plaintiff as a part of the agreement with Woolworth ; the defendant was not discharged by the agreement to give further time of payment." The defendant's evidence tended to prove that the plaintiff and Woolworth, at the maturity of the notes, made an unconditional agreement to extend the time of payment of the debt, without reservation of the plaintiff's right of holding and proceeding against the endorsers, and without the consent of the defendant.   The plaintiff's evidence tended to prove, among other things, that the agreement, if any was made, contained an express reservation of his rights against the endorsers, and that it required the consent of the defendant in order to give it effect.   Each party was entitled to a charge as to the legal result of such a state of facts as he claimed existed, and his testimony tended to prove.   *Clark* v. *Tabor*, 28 Vt. 222.   It appears that the court first called the attention of the jury to the aspect of the case as presented upon the defendant's evidence, and then charged them in view of the plaintiff's evidence, in substantial conformity with his *second* request.

It is insisted by the plaintiff's counsel that that part of the charge relating to the right of the endorsers " *to pay the notes* at any time and to proceed against Woolworth for reimbursement," required the jury to find, in order to give effect to the plaintiff's reservation against the endorsers, that such right of the endorsers was made, by express stipulation as a part of the agreement between Morse and ·

Woolworth. It is clear that Morse could not reserve his right of holding and proceeding against the endorsers at any time, without reserving their right to pay the notes. A reservation of the right of the creditor to proceed at any time against the surety, necessarily implies that the surety may pay the debt, instantly. Such reservation of the right of the creditor is, in effect, the same as in an agreement to give time to the principal, or to vary the contract in any other particular, when made with a reservation of the right of the surety; for under these circumstances the surety is still entitled to compel the principal to perform the contract as it stood originally, or to perform it himself and then proceed against the principal for reimbursement. A necessary consequence of the reservation of Morse's rights against the defendant, was a continuance of the defendant's right to pay the notes at any time, and to be indemnified by Woolworth, 3 Lead. Cases in equity, 563 and 537, and cases therein cited. Woolworth cannot raise the objection upon his right to time as against the defendant, because there is the contract of Woolworth, arising out of the contract between the plaintiff and Woolworth for reserve against the defendant, that the latter, if the plaintiff goes against him, shall not be deprived of the benefit of the contract as against Woolworth. 18 Vesey, 26; 3 Lead. Cases in equity, 537. These principles are too well settled to require either argument or the citation of further authorities to support them. No question is made but that it would follow, as a legal consequence of this reservation, that the defendant could, by reason of his continuing liability to suit, have paid this debt at any time, and have proceeded at once against Woolworth for reimbursement; but it is said the defendant's rights, under the alleged agreement, were nothing which Morse and Woolworth could contract about, either to restrain or enlarge them. It does not appear that Morse and Woolworth undertook to restrain the rights, or to enlarge the liabilities of the defendant, but the plaintiff's evidence tends to show that they did undertake, by express stipulations, to reserve the rights and retain the liabilities of all parties, precisely as they stood under the original contract. In order to determine whether the court erred in the charge given, some further consideration of the case as presented upon the plain-

tiff's evidence becomes necessary. It will be seen that, at the time of the alleged agreement to give further time of payment, the notes were over due ; Morse then had the right to proceed at once against Woolworth and the defendant, or against either of them and collect the debt. The defendant then had the right to pay the debt at any time and proceed against Woolworth for reimbursement. These matured rights and liabilities of the parties to the contract as it then stood, were well understood by Morse, Woolworth and the defendant. Morse, at the maturity of the notes, applied to Woolworth for payment, but he was unable to pay the debt at that time and proposed to Morse to give him further security, by the mortgage, and requested him to give further time of payment. Morse accepted the security, but denied (on trial) that he agreed to delay payment in consideration of the mortgage. He claimed and his testimony tended to prove that whatever was said or agreed upon, on the subject of affording indulgence to Woolworth, was coupled with the express condition and understanding between Morse and Woolworth, that Morse should not discharge the endorsers, but should hold them on their endorsements, and should have the right to collect the debt at any time. This evidence tended to prove that the plaintiff expressly reserved his right of holding and proceeding against the endorsers, and that the reservation of such right was made by the plaintiff, as a part of the agreement to delay. Now if the plaintiff's evidence, or his request, had stopped here, there might be a plausibility in the argument of counsel upon the exception to the charge ; but the plaintiff claimed, and his testimony tended to prove, that he and Woolworth, in order to render it doubly certain that the defendant should not be prejudiced by any indulgence or delay which the plaintiff proposed to afford Woolworth, expressly agreed that the plaintiff should not delay collection of the debt, without consent of the defendant, and the plaintiff should have the right to collect the debt " whenever he should see fit." Under such agreement, Woolworth could claim no delay without consent of the defendant ; and it is clear that, if the transaction between the plaintiff and Woolworth was such as the plaintiff claimed and his evidence tended to prove, it constituted an express reservation of the rights of the

defendant, and retained all liabilities incurred by Woolworth, under the original contract. The agreement, which the plaintiff's evidence tended to prove, could have no binding force upon anybody until ratified by the defendant, and it was not claimed that the defendant ever ratified the agreement, or consented to delay payment of the debt. Upon the plaintiff's theory and upon his evidence, the transaction, between him and Woolworth, was a proposition merely to delay collection of the debt, and could amount to nothing more without the consent of the defendant. Morse and Woolworth, by making the validity of the agreement depend upon consent of the defendant, could reserve all rights which the plaintiff or defendant had at the maturity of the notes, and these rights would compel Woolworth to perform the contract as it originally stood, and in case of his neglect the defendant could pay the debt at any time and proceed against Woolworth for reimbursement, the same as though no agreement or proposition to delay payment had been made. The stipulation, requiring consent of the defendant in order to perfect the agreement to delay, was an express recognition by the plaintiff and Woolworth, of the rights of the defendant and the continuing liability of Woolworth under the original contract. It may be true that the defendant derived, from the express stipulation of the plaintiff and Woolworth in respect to his rights, no aid in their enforcement, but it was, nevertheless, competent for the plaintiff and Woolworth to stipulate that the defendant should have all the rights he could claim under his engagement; and it would seem they preferred to make an express reservation of the defendant's rights rather than leave them to rest upon the legal consequence alone of the contract for reserve against him. In view of the plaintiff's request and his evidence, we think the court did not err in charging the jury " that if they should find that in the present case it was understandingly agreed between Morse and Woolworth that the endorsers should not be discharged, but should have the right to pay the notes at any time, and to proceed against Woolworth for reimbursement the same as though no agreement to delay had been made, the endorsers would not be discharged, even though the jury should find that Morse did agree to delay payment as the defendant's testimony tended to show he did;

but to give it such effect, the jury must find that the reservation of such right was made as a part of the agreement between Morse and Woolworth." The jury, upon the evidence, and in view of the charge in respect to the rights of the endorsers, would very naturally understand, when a debt is due, it follows as a matter of course that any person liable to pay it has the right to pay it at any time ; and, if his relation is that of surety, he has the right to proceed at once against the principal for reimbursement the same as for the collection of any other debt. The jury must have treated this as a conceded point. But if any doubt exists, as to whether the language of the court above quoted sufficiently explains what facts would entitle the plaintiffs to recover, it is entirely removed by the subsequent part of the charge. After using the above quoted words, the court proceeds, and concludes the charge in these words, " that it would not be sufficient that Morse determined in his own mind, or in the course of the conversation on the subject, said he would *hold on to the endorsers ;* but to give that right notwithstanding the agreement, it must have been understood and assented to by Woolworth, so as to make that provision a part of the contract between him and Morse." This part of the charge restricts the reservation necessary to retain the liability of the endorsers, to a *reservation* by *Morse* of *his right* to proceed, at any time, against them. This restriction, we think, renders the charge sufficiently certain, that, in order to entitle the plaintiff to recover, it did not require the jury to find an agreement between Morse and Woolworth that the endorsers should have the right to pay the notes, at any time, and to proceed against Woolworth for reimbursement. The plaintiff claimed to recover, notwithstanding the agreement to delay, if the jury should find he expressly reserved his right of holding and proceeding against the endorsers, and that such reservation of his right against the endorsers was made by the plaintiff as a part of the agreement. The substance of the charge upon this point appears to have been, that it would be sufficient to give Morse the right to *hold on to the* endorsers, notwithstanding the agreement, if it was understood and assented to by Woolworth, so as to make the provision that Morse should have the right to *hold on to the* endorsers a part of the contract between him and Woolworth.

This is the least the plaintiff claimed, and the least the court told the jury would be sufficient to entitle the plaintiff to recover. It seems clear that the court in this part of the charge so far explained the preceding clauses of the charge, and so fully instructed the jury as to what would constitute a sufficient reservation by the plaintiff of his right of holding and proceeding against the endorsers, that the jury must have understood that the only question in dispute was, whether the plaintiff did, in point of fact, make such reservation of his right against them.

The judgment of the county court is affirmed.