# Hodges v. Elyton Land Company.

*Action on Promissory Note.*

1. *Principal and surety; when surety is not discharged by extension of time granted to principal.*—The purchaser of land, holding a bond for title, who, by a sale of his interest upon terms involving his vendee's assumption of the payment of the purchase money notes to the orig-

[Hodges v. Elyton Land Company.]

inal vendor, becomes, in relation to such subvendee, the latter's surety for the payment of said notes, is not discharged from liability thereon, by a new contract between the original vendor and the subvendee extending the time of payment, when such contract provides that it shall not affect the original notes, nor extend them, without the consent of the maker.

APPEAL from the Circuit Court of Jefferson.
Tried before the Hon. JAMES J. BANKS.

This was an action by the Elyton Land Company against W. T. Hodges and others, on several promissory notes which were given by the defendants to the plaintiff. The opinion states the matter relied on as a defense and the evidence on the subject. The cause was tried by the court without a jury, and upon the hearing of all the evidence the court found the issues in favor of the plaintiff, and rendered judgment accordingly. The defendants duly excepted to this action of the court. They appeal from said judgment, and assign the rendition thereof as error.

JOHN M. MARTIN and A. B. MCEACHIN, for appellants.—The Elyton Land Company ratified the transaction by which Dodson & Co. were substituted as purchasers in the place of Hodges and associates. By this transaction Dodson & Co. became the principals, and Hodges and associates the sureties of the debt. *George v. Andrews*, 45 Am. Rep. 706; *Klopworth v. Dressler*, 78 Am. Dec. 69; 1 Jones on Mortgages, 741; Brandt on Suretyship, §§ 26, 206, 109.

Appellee's counsel admits the legal relation of the parties, but contends that the liability of Hodges and associates was retained by the express terms of the contract. We contend that when the creditor made a new contract with the sureties, which changed the time of payment, and otherwise altered the original contract, the sureties were thereby released.

Sureties are favorites of the law, and they have a right to stand upon the exact words of their contract. They will be discharged from liability if any alteration be made, though the alteration be for their benefit.—*Vann v. Lunsford*, 91 Ala. 576; *Crescent Brewing Co. v. Handley*, 90 Ala. 486; 1 Jones on Mortgages, 742; 24 Am. &

[Hodges v. Elyton Land Company.]

Eng. Ency. of Law, 822, note 3. The reservation against Hodges and associates by the Elyton Land Company in its new contract with Dodson and Brown is simply a reservation by the creditor against the surety, when the original contract is changed or substituted without the knowledge or consent of the surety, and is inoperative against Hodges and associates. *Carlo v. Davis*, 8 Hun. (N. Y). 223; 1 Jones on Mortgages, § 742, *Spencer v. Spencer*, 95 N. Y. 353; *Porsom v. Jones*, 76 N. Y. 274.

The transaction between the Elyton Land Company and Dodson and Brown absolutely novated the contract, and thereby released Hodges and associates from all liability for the debt. 16 Am. & Eng. Ency. of Law, 880, 891, 894, 869, 896; *Wood v. Corcoran*, 1 Allen, 405.

ALEX. T. LONDON, *contra.*—1. The relation of vendor and vendee, where the vendor retains a lien for the unpaid purchase money, is the same in all essential respects as that subsisting between mortgagor and mortgagee. *Haley v. Burnett*, 5 Port. 470; *Woodward v. Echols*, 58 Ala. 665; *Lowrey v. Nichols*, 75 Ala. 109. 2. A purchaser from the mortgagor, assuming to pay the mortgage debt, becomes liable as principal, and the mortgagor is his surety. 15 Am. & Eng. Ency. of Law, 837, n. 10, 838; *Calvo v. Davis*, 74, N. Y. 211. 3. The mortgagee may treat the purchaser who has assumed the debt as such principal, and have a personal decree against both him and the mortgagor for the deficiency. *Corbett v. Waterman*, 11 Iowa, 86; *Thompson v. Bertrand*, 14 Iowa, 476; *Halsey v. Reid*, 9 Paige, 446; *Blyer v. Mulholland*, 2 Sand. Ch. 477; *Crawford v. Edwards*, 33 Mich. 354; 1 Jones on Mortgages, § § 749, 750, 752, 755, 758; 3 Pom. Eq. Jur. § 1206. 4. Extending time of payment to the principal does not discharge the surety, if the creditor at the time of making the extension reserves all remedies against the surety. 2 Brandt on Suretyship, § § 365, 367, 376; 1 *Ib.*, § 147; 1 Story's Eq. Jur. § 326; *Calvo v. Davis*, 78 N. Y. 211, (29 Am. Rep. 130); *George v. Andrews*, 60 Md. 26 (45 Am. Rep. 706); *Morgan v. Smith*, 70 N. Y. 537; 24 Am. & Eng. Ency. of law, 830.

McCLELLAN, J.—Counsel upon either hand are agreed on the proposition that the subvendees became the principals, and the original vendees became the

[Hodges v. Elyton Land Company.]

sureties to them as such principals, in respect of the debt due the Elyton Land Company for purchase money of the lots. This leaves but one question in the case, viz : whether the extension of time granted to these principals in the way shown by the bill of exceptions operated to release these sureties who are here sued.

· The facts are as follows : Plaintiff sold to the defendants certain lots of land, gave them bonds for title, put them in possession, and took the notes sued on for the purchase money. Then defendants sold the land to Dodson & Co., at a profit, transferred to them said bonds for title, and put them in possession, Dodson & Co. assuming the payment of the original purchase money to plaintiff, the latter, however, having at the time no connection with this arrangement. Dodson & Co. was a partnership composed of Dodson, Brown, and three other persons. These latter subsequently sold out their interest in the land and transferred the bonds for title to Brown and Dodson, a transaction with which plaintiff was likewise without connection. After this, Dodson & Brown applied to plaintiff for an extension of time for the payment of the notes they had assumed to pay for defendants ; and thereupon plaintiff took a surrender of said bonds for title, executed a deed to Dodson & Brown, took their notes for the original purchase money, payable at a date beyond the maturity of defendants' notes, and a mortgage on the land to secure payment of the purchase money. All this was done under and in accordance with an agreement then entered into between plaintiff and Dodson & Brown, which, after reciting the foregoing facts set forth the following stipulation : "That on the payment in full by the said subvendee (Dodson & Brown) of said promissory notes given by them to the Elyton Land Company, the Elyton Land Company will cancel and surrender to them said original notes given by said original vendees (the defendants) for said original purchase money. But, until the payment in full by said subvendees of the said notes given by them to the Elyton Land Company, the said notes of original vendees remain in full force, and are not paid or discharged, except to the extent of the cash paid by said subvendees to the Elyton Land Company on account of said purchase money, said original vendees being enti-

tled at their option to the extention granted as aforesaid to said subvendees.''

The surety is, of course, entitled to stand upon the terms of his contract; and, if these be altered in any material particular without his consent, he is thereby discharged, and this though the change may have been of benefit to him. Therefore, if the payee, by an agreement, binding on him, with the principal, extends the time of payment of a note, without the consent of the surety thereon, the latter is discharged. The contract of the surety in such case is to pay at original maturity of the paper, and not at the date fixed by the agreement for an extension; and such extension, without more, takes away the surety's right to pay at the time origininally fixed. This is a right esteemed material to his protection, because, upon the exercise of it, he may immediately proceed against the principal for indemnity, while his remedy to that end might well be unavailing if he were forced to wait to some future time fixed by the payee and principal, because of the insolvency, which meantime may have overtaken his indemnitor. Then, too, the surety upon maturity of the note may file a bill *quia timet* to compel the principal to pay the debt. This right is suspended by such an extension as we have supposed, and, for this reason also, the surety's contract is changed, and he is discharged.

But where, in and by the contract of extension between the payee and the principal debtor, all the rights of the surety are expressly preserved,—if notwithstanding the agreement for the extension, he may still pay the note at maturity and go upon the principal for reimbursement, or may proceed by bill *quia timet* on maturity to compel the principal to pay,—and he has these rights when the agreement for extension expressly reserves all remedies against him,—such contract between the payee and principal does not discharge the surety. The law on this subject is well stated by Mr. Brandt as follows: ''If the creditor extends the time of payment to the principal, but at the same time expressly reserves all remedies against the surety, the surety is not discharged by such extension. With reference to this matter it has been said: 'The giving of time to the principal debtor, with a reservation of the remedies, has in many cases the appearance of absurdity, because, when

[Hodges v. Elyton Land Company.]

distinctly understood, it seems to be almost a flat contra-
diction in terms. Such a reservation of remedies, in
order to hold the surety, must amount to this : that the
creditor agrees to give time to the debtor, and yet they
both agree that the surety may at any time force the
creditor to proceed against the principal by a bill *quia
timet*, or, by paying the whole debt, have an assignment
of all the securities, and proceed immediately himself
against the principal debtor, or in any mode authorized
by the assigned securities. Such an agreement, reserv-
ing the remedies, might not in many cases be of the
least benefit to the principal debtor, since it leaves him
entirely at the mercy of his surety ; yet, if the parties
do so expressly contract, the surety can have no cause to
complain that the implied contract has been altered or
impaired in any way to his prejudice, and therefore he
cannot be discharged.' It has also been said that 'the
debtor cannot complain if the instant afterwards the
surety enforces these remedies against him, and his con-
sent that the creditor shall have recourse against the
surety is impliedly a consent that the surety shall have
recourse against him. It is very obvious that a princi-
pal debtor may gain little or nothing by such a compo-
sition as this with his creditor, inasmuch as he is left
liable to the like proceedings against him by his sureties
which his creditor might have instituted if no composi-
tion had been made. But if he pleases to subject him-
self to that liability by voluntarily executing an agree-
ment which has that effect, there is no legal reason why
he should not be held to that agreement.' Again, it has
been said that the reservation of remedies against the
surety 'rebuts the presumption that the surety was meant
to be discharged, which is one of the reasons why the
surety is ordinarily exonerated by such a transaction ;
and, secondly, that it prevents the rights of the surety
against the debtor being impaired, the injury to such
rights being the other reason ; for the debtor cannot
complain if, the instant afterward, the surety enforces
those rights against him, and his consent that the cred-
itor shall have recourse against the surety is impliedly a
consent that the creditor shall have recourse against
him.' In order that the extension of time in such a
case shall not discharge the surety, the remedies against
him must be distinctly and explicitly reserved. 'A stip-

[Hodges v. Elyton Land Company.]

ulation of that kind is, in many cases, so very absurd that it must be seen plainly.' A creditor agreed to give time to the principal, but at the same time reserved the right to sue when requested by the sureties, and it was held the sureties were not discharged. When, at the time an agreement for extension between principal and creditor was made, it was also agreed between them that the surety should not be discharged, but should have the right at any time to pay the debt, and proceed against the principal, it was held the surety was not discharged.''—2 Brandt, Suretyship, § 376, citing, among many others, the following cases: *Claget v. Salmon*, 5 Gill & Johns. 314; *Muller v. Dolshuetz*, 89 Ill. 176; *Sohier v. Loring*, 6 Cush. 537; *Kearsley v. Cole*, 16 Mees. & Wels. 129; *Rucker v. Robinson*, 38 Mo. 154; *Morse v. Huntington*, 40 Vt. 488; and to the same effect are the following authorities: *Morgan v. Smith*, 70 N. Y. 537; 1 Brandt on Suretyship &c., § 147; *Calvo v. Davies*, 73 N. Y. 211, s. c. 29 Am. Rep. 130; 24 Am. & Eng. Encyc. of Law, p. 830.

Applying this principle to the present case, it is obvious that the agreement for an extension of time for payment between plaintiff and Dodson and Brown did not discharge the defendants, standing in the relation of sureties to said sub-vendees, because all their rights and remedies are preserved intact therein, and it is thereby expressly provided that the extension shall not affect them unless they elect to avail themselves of it, or, in other words, consent to it. Notwithstanding the agreement, they had a perfect right to proceed by a bill *quia timet* on the maturity of their notes to compel, not only Dodson and Brown, but the other persons who were members of the firm of Dodson & Co. when the sale to that partnership was made, to pay the plaintiff, or to require the principle to sue as authorized by section 3153 of the Code; and they also had the right to pay the notes at maturity, and at once go upon Dodson and Brown and such other persons for idemnification. Either of these courses, both fully open to them, would have protected them from the consequences of Dodson's subsequent insolvency, of which they now complain.

It is also clear that they lost no security otherwise available to them by the substitution of a deed and mortgage back for the retention of title and bonds for

title involved in the original transaction, for this did not in point of fact affect them, since the land was applied to the debt under the substitutional arrangement as·it would have been under the original contract; and, moreover, under the agreement for the extension, they were in no sense bound by this transaction between plaintiff and Dodson & Brown.

We therefore concur in the conclusion of the judge of the Circuit Court; and the judgment must be affirmed.