# Chattanooga Foundry and Pipe Works v. Hembree, *et al.*

## and

# Hembree, *et al.* v. Chattanooga Foundry and Pipe Works.

*Bill in Equity to enforce a Vendor's Lien.*

1. *Vendor's lien not affected by extension of time of payment of pur-
chase money.*—A vendor who has no actual knowledge that his vendee
has sold a portion of the land, or that some one else has acquired
rights that would be affected by it, has a right to make an agreement
with his vendee for the extension of the time of payment of the
unpaid balance of the purchase money ; and by such extension of the
time of payment he does not waive his lien on the portion of the land
sold by his vendee.

2. *Same; same; sufficiency of evidence.*—The testimony of a witness
that he thought that the vendor, when he extended the time of pay-

ment of the balance of the purchase money, knew that a certain corporation had purchased a portion of the land of the vendee corporation. of which the witness was president, is insufficient to prove that the vendor had knowledge of such sale and purchase.

3. *Same; same; constructive possession by sub-purchaser not sufficient to show actual knowledge on the part of the vendor.*—The mere taking of possession of land by a sub-purchaser is not sufficient to impute such knowledge to the vendor of the purchase of the land from his vendee, as would make an extension by the vendor of the time of payment of the balance of the purchase money due from his vendee a waiver of the vendor's lien upon the land sold to the sub-purchaser.

4. *Same; same; extent of lien.*—A vendor sold certain lands, receiving a part payment of the purchase money in cash and taking the vendee's note for the deferred payment, the deed reciting the execution of the note for the balance of the purchase money. Subsequently, the vendor returned the money paid in cash by the vendee to him, with the agreement that if certain litigation concerning the land resulted favorably to the vendor, the cash should be paid back to him, and the note for the balance of the purchase money should be paid. Prior to entering into this agreement, the vendee had sold a portion of the land, but the vendor had no actual knowledge of such sale. Upon the litigation resulting favorably to the vendor, he filed a bill to enforce his vendor's lien. *Held:* That as against the sub-purchaser, the vendor had a lien only for the amount of the note which was given for the deferred payment of the purchase money.

Appeal from the Chancery Court of Jackson.

Heard before the Hon. W. H. Simpson.

The facts of this case are sufficiently stated in the opinion. Upon the rendition of the final decree, the Chattanooga Foundry and Pipe Works sued out an appeal, and assigned as error, among other rulings of the chancellor, the final decree in which he declares the complainants to have a lien on the lands purchased by it for the amount of the note, which was given by the improvement company. The complainants prosecute a cross appeal, and assign as error the failure of the chancellor to declare that they had a lien for the whole amount due to the vendor.

Martin & Bouldin, for Chattanooga Foundry and Pipe Works.—The lands purchased by the Chattanooga Foundry and Pipe Works are not subject to the payment of any part of the complainants' debt against the Land and Improvement company.—*Wendlandt v. Sohre*,

37 Minn. 163, 33 N. W. Rep. 700; *Wadsworth v. Lyon*, 93 N. Y. 201; *Barnes v. Mott*, 64 N. Y. 397, 21 Amer. Rep.625; *Smith v. Shelden*, 35 Mich. 42, 24 Amer. Rep.529; *Murray v. Marshall*, 94 N. Y. 611; *Spencer v. Spencer*, 95 N. Y. 353; *Calvo v. Davies*, 73 N. Y. 211; 1 Brandt on Suretyship, § 37.

If said lands are subject to the payment of any part of said indebtedness, it can not exceed the balance due upon the note which was given for the deferred payment of the purchase money. Lands subject to a common incumbrance, when aliened in parcels, are to be applied in the inverse order of alienation. On the alienation of a parcel, an equity arises instantly in favor of the sub-vendee, by which the remaining lands are first liable, and if other transactions are had with the remaining lands, this equity is in no way affected.—14 Amer. & Eng. Encyc. of Law, 707 and note; *Mobile, &c., Ins. Co. v. Huder*, 35 Ala. 713; *Dacus v. Streety*, 59 Ala. 183; *Aderholt v. Henry*, 87 Ala. 415; *Prickett v. Sibert*, 75 Ala. 315.

So far from it being in the power of the paramount creditor to impose an additional burden on the lands of the sub-vendee, he is bound to protect and preserve his individual securities, and failing to do so he loses his right to resort to the lands of the sub-vendee.—*Gusdorf v. Ikelheimer*, 75 Ala. 148; *Turner v. Flinn*, 67 Ala. 529; *Dugger v. Tayloe*, 60 Ala. 504.

J. E. BROWN, for Hembree.—The rule of law applicable to this case will be found in the case of mortgagor and mortgagee, where the rights of third parties have intervened. There is no difference in principle, when the mortgage is a legal one, and when it is an equitable one, when the question is as to the respective rights of the parties in a court of equity. The rights of a vendee from a mortgagor are fully discussed and settled in Jones on Mortgages.—1 Jones on Mortgages, (3d ed.), §§ 722-724 and authorities cited.

It is a correct rule that the vendor must be put on notice of a third party's right before he is charged with the duty of regarding them.—1 Jones on Mortgages, §§ 722-723; 2 Jones on Mortgages, § 1624; 3 Pomeroy's Equity, 1226.

If a mortgagee, with actual notice of the facts, releases from the mortgage that portion of the premises primarily liable, he thereby releases *pro tanto* the portion secondarily liable. When the mortgage is sought to be enforced against the owner of the latter, he can claim an abatement of his liability to the extent of the value of that portion which should have been made the primary fund.—*Matteson v. Thomas*, 41 Ill. 110 ; *Briscoe v. Power*, 47 Ill. 447 ; *Hurd v. Eaton*, 28 Ill. 122 ; *Warner v. De Witt County Bank*, 4 Ill. App. 305 ; *Boon v. Clark*, 5 L. R. A. 276, note 10.

Notice must be given to the mortgagee of any subsequent conveyance, of a parcel of the mortgaged premises, so as to prevent him from affecting the equities of the grantee therein, by his dealing with other portions of the same premises.—3 Pom. Eq. Jur., 221 ; *Patty v. Pease*, 277 ; 35 Amer. Dec. 685 ; *Stuyvesant v. Hone*, 1 Sand. Ch. 419, 2 Pom. Eq. Jur. 68 ; *Edgerton v. Young*, 43 Ill. 464 ; *Dodds v. Snyder*, 44 Ill. 53 ; *Smith v. Dinsmoor*, 119 Ill. 656 ; *Hosmer v. Campbell*, 98 Ill. 572 ; *Iglehart v. Crane*, 42 Ill. 261 ; 2 Jones on Mortgages, § 1624.

HEAD, J.—On February 28, 1890, R. L. Hembree sold and conveyed to the Bridgeport Land and Improvement Co. 152 acres of land at the price of $7,720, of which the sum of $3,907.50 was paid in cash, and for the residue the purchaser executed to Hembree its promissory note dated February 28, 1890, with interest. The deed to the purchaser recited the fact of the execution of this note as and for a part of the purchase money.

The purchaser went into possession of the land, and on May 2, 1890, sold and conveyed by deed, for a valuable consideration with covenants of warranty and against incumbrances, certain forty acres of the land to the appellant, Chattanooga Foundry and Pipe Works, who went into possession and extensively improved the same.

Hembree had purchased the 152 acres of land from one Hammon, and on May 2, 1890, Hammon instituted suit in chancery against him and the Bridgeport Land and Improvement Co., seeking to have his conveyance to Hembree declared a mortgage, and be let in to redeem,

[Chattanooga Foundry & Pipe Works v. Hembree, *et al.*, and Hembree, *et al.* v. Chattanooga Foundry & Pipe Works.]

On June 2, 1890, while that suit was pending, Hembree, as the bill avers, being afraid he might be unsuccessful therein, and be mulcted in a large sum of money as damages which he would be liable to pay said Bridgeport Land and Improvement Co., under his covenants of warranty to the company, entered into a written agreement with the said Improvement Company, reciting the pendency of said suit; that Hembree wished to provide against any liability for damages on the part of said Improvement Company, or its assignees; that the company was not in the position to improve the land while said suit was pending, without risk to its vendees, and therefore, agreeing that Hembree, in consideration of release from all claim to damages by the company, would return, and he did return, to the company the cash payment paid to him by it for the land, to be held by it, without interest, until said suit should be finally decided, and that said purchase money note should be held by said Hembree, without interest, until the same event; and if Hembree should recover the land, then the company should pay back to him said money and pay off said note, but without interest; but if Hembree should fail in the suit and not be able to hold the land, then the company should give back the deed made by him to it, and not claim any damages, costs or charges against him on account of the land, or failure of title thereof, but Hembree should pay the costs of said suit if they should be taxed against him.

The suit was eventually decided in favor of Hembree, and his title to the land, which he had conveyed to the said Improvement Company, was established. The company having failed to return said sum of money left with it and to pay said purchase money note, the administrators of Hembree, who died in the meantime, recovered a judgment at law againt the said company, on August 10, 1893, for $8,045.92, being the aggregate of the two sums with interest; and on December 14, 1893, filed this bill to enforce the lien of a vendor on the lands. The defendants are the said Improvement Company and the Chattanooga Foundry and Pipe Works. The bill claims a lien for the entire amount of the judgment, which, we have seen, includes the cash deposited with the Improvement Company which it failed to return.

The company is insolvent, and suffered the bill to be taken as confessed. The controversy is between the Chattanooga Foundry and Pipe Works, in reference to the forty acres purchased by the latter. The orignal bill itself recognized the right of the Pipe Works to have the assets marshalled, and the land, other than that purchased by it, first sold to satisfy complainants' demand; and, in fact, by a consent decree, that part of the land was sold by the register, but for a sum largely less than sufficient to pay the amount due on the deferred portion of the purchase money, represented by said note; so that there was a large balance due complainants, after excluding so much of the judgment as was represented by the said cash deposit which said Improvement Company failed to return.

The Pipe Works answered the bill, insisting, first, that the complainants' intestate waived his lien on the forty acres purchased by it, by the extension of payment given the principal debtor, the Improvement Company (lasting until that company became insolvent) as evidenced by said written agreement before described; and, secondly, that complainants had no lien for that part of the debt represented by said cash deposit.

The chancellor decreed that the complainants had a lien on the forty acres for that part of the judgment represented by the deferred purchase money note, but not the other part, holding that there was no waiver of this lien by the agreement aforesaid.

The question as to the effect of said extension agreement, as a waiver or not, by Hembree, of his lien on the forty acres sold to the Pipe Works, has been fully discussed in the briefs; the counsel of the Pipe Works contending that by its purchase. it became surety to the Bridgeport Land and Improvement Company, to the extent that the land. so purchased by it was liable to the vendor's lien in favor of Hembree; which relation it was the duty of Hembree to respect, and to abstain from any dealing with the principal debtor which would have the effect of diminishing or impairing the rights of the Pipe Works as a surety. For a full and clear statement of some general rules of law on this subject, see *Hodges v. Elyton Land Co.*, 109 Ala. 617, and *Moses Bros. v. Home B. and Loan Association*, 100 Ala. 465.

[Chattanooga Foundry & Pipe Works v. Hembree, *et al.*, and Hembree, *et al.* v. Chattanooga Foundry & Pipe Works ]

But, whatever may have been the relations of the parties, brought about by the purchase of the Pipe Works, it is very clear that Hembree could not be prejudicially affected by the extension granted to the Improvement Company, without actual notice, at that time, of the sub-purchase. We quote, from appellant's brief, the following apt language of Judge Cooley, in *Smith v. Sheldon*, 35 Mich. 42 ; 24 Am. Rep. 529 : "Now a surety, as we understand it, is a person who, being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed before the surety was compelled to do so. It is immaterial in what form the relation of principal and surety is established, or whether the creditor is or is not contracted with in the two capacities, as is often the case when notes are given or bonds taken ; the relation is fixed by the arrangement and equities between the debtors or obligors, and may be known to the creditor, or wholly unknown. If it is unknown to him, his rights are in no manner affected by it ; but if he knows that one party is surety merely, it is only just to require of him that, in any subsequent action he may take regarding the debt, he shall not lose sight of the surety's equities."

Counsel for the Pipe Works say, in their brief, that the evidence shows notice. Counsel for complainants say to the contrary. We have examined the testimony. The Pipe Works purchased on May 2, 1890. On May 23, following, it laid the foundation for the first structure on the land. We think it had no visible possession of the land up to that time. The extension agreement was entered into June 2, 1890. The only testimony as to actual notice was the following statement of Gunter, who was, in 1890, president of said Improvement Company : "I think that Hembree knew that the Chattanooga Foundry and Pipe Works had bought the forty acres of land when he returned the money to the Bridgeport Land and Improvement Company on June 2, 1890." One Jones made the same statement in his testimony. J. S. Hembree, one of the complainants, and a son of the deceased, said in his testimony : "He (his father) had no knowledge or information of the sale of the forty acres of land by the Bridgeport Land and Improvement Co. to the Chattanooga Foundry and Pipe

Works at the time he made the contract of June 2, 1890, that I know of."

This is all the testimony on the subject. It is obvious that one statement is about as valuable as the other, and that neither rises to the dignity of evidence upon which the court would act. It would be laying a heavy hand on Hembree, now deceased, to charge him with knowingly waiving his valuable rights upon such statements as those of appellant's witnesses.

So far as the possession of the land by the Pipe Works is concerned, mere constructive notice, such as possession affords to a purchaser or one acquiring rights in lands from a party out of possession, was not sufficient to fix upon Hembree a waiver of his lien, by reason of a dealing with his vendee in reference to the time of payment of the purchase money. The relation between Hembree and the Improvement Company was that of debtor and creditor. The latter was personally bound for the debt. The lien on the land was a mere incident to the debt—a security for the purchase money which a court of equity would raise and enforce. The agreement, so far as complained of, was a mere extension of the time of payment of the debt. Hembree was not thereby a purchaser of the land, or of any interest therein. Without actual knowledge that some one else had acquired rights that would be effected by it, he could make any agreement he chose with his debtor as to the time of payment. He was not required to go to the land and ascertain whether any one was in possession claiming it, or not.

The actual visible possession of the land by the Pipe Works was not of such duration as to raise a presumption of actual knowledge on the part of Hembree. It is not, even, shown that he resided near the land, or had any opportunity of seeing that the Pipe Works was in possession exercising ownership over it. We think there was a failure of the proof of notice required to charge Hembree with a waiver of his lien.

It is not a matter of doubt that the land of the Pipe Works was liable only for the purchase money represented by the note. At least, as against that company, who had a right to stand upon the recitals of the deed of Hembree to the Improvement Company, there was never a lien, except for the deferred purchase money. We do

not decide whether the failure of the Improvement Company to return the deposit, created a lien on the land, as against the company, or not. That question is not before us.

Affirmed on both appeals.