WILLIAM B. VIELE *v.* JARVIS HOAG.

[ IN CHANCERY.]

*Chancery Jurisdiction.    Surety.*

Though the liability of sureties is governed by the same principles at law, as in equity, a court of equity will not send a party suing there, to a court of law for a discharge or relief; but will extend the same relief, and exercise the same powers, in behalf of sureties, that were exercised before jurisdiction of this subject was entertained at law.

Nor is it in the power of a creditor, by first commencing proceedings at law, to deprive the surety from seeking his relief in chancery; and when there has been no delay or negligence in seeking relief in equity, a court of chancery will exercise a controling power over the parties in their proceedings at law.

If a bill is brought for discovery, merely, in aid of proceedings at law, and the discovery fails, the bill will be dismissed.

Sureties on a note are not discharged, where time has been given, if there has been a reservation of the right to call for payment, or a right to proceed against the surety.

APPEAL from the court of chancery. The orator alledged in the bill, that Bial and Henry Boynton were partners in manufacturing of cloths and the purchase of wool, in Hinesburg, Vt., and in full business and credit, all of which was well known to the defendant; and on or about the 24th day of June, 1846, the defendant, being possessed of a large quantity of wool, proposed to sell it to the said B. & H. Boynton, the partnership firm of the said Bial and Henry, at and for the price of twenty-nine cents per pound, and to loan at the same time to said B. & H. Boynton such an amount of money, as would, when added to the sum total of the value of such wool at twenty-nine cents per pound, amount to the sum of one thousand dollars, and to take therefor, the note of said B. & H. Boynton and one Jedediah Boynton, and some other responsible person, as surety, payable in one year from date with interest. That B. &. H. Boynton, by the said Bial Boynton, who conducted the negotiation, told the defendant that the wool was much higher than wool of that quality was currently sold for; that defendant replied that he thought it would come to that price, and that it was an object to hire money at six per cent. That B.

Viele v. Hoag.

& H. Boynton accepted the offer, and the defendant named a person to be obtained as such surety, whom B. &. H. Boynton declined to procure, but offered in his stead the name of the orator. The defendant said he would accept a note for said thousand dollars, so signed by the orator with said B. & H. Boynton and Jedediah Boynton, for said sum and interest, payable on demand, and unless he should become dissatisfied with the security, he would let the debt run, and extend said credit for the term of one year, as was first proposed. The terms thus modified said B. & H. Boynton accepted, and in performance thereof procured the orator to sign, as such surety merely, without any consideration, a note for one thousand dollars, payable on demand to the defendant. And further, that at or about the expiration of one year, the defendant applied to B. & H. Boynton for payment of said note, and finally proposed to said B. & H. Boynton, if they would purchase of him a certain other lot of wool for cash, and pay the interest on said thousand dollar note, and four hundred dollars of the principal, that he, the defendant, on that consideration, would extend the time of payment for the residue of said note, another year; which proposition the said B. & H. Boynton accepted and agreed to pay, and did pay for said last lot of wool, the sum of thirty-two cents per pound; that the orator was wholly ignorant of such contract, or of there having been at any time, any contract whatever, other than what appears upon the note, and that the same was made without his knowledge or consent.

That on the 17th day of June, 1848, B. & H. Boynton and said Jedediah Boynton became wholly insolvent, and that about the 24th day of June, 1848, the said Jedediah Boynton deceased, wholly insolvent, and that the defendant sued out a writ of attachment on the 21st day of August, 1848, on said note, and attached a large amount of personal property of the orator, &c.

The defendant, in his answer, admitted the trade to be as set forth in the orator's bill, as to the thousand dollar note, but expressly denied that there was any agreement whatever between himself and the said B. & H. Boynton, or either of them, for the payment to him, directly or indirectly, for the loan of said money, anything more than legal interest therefor, or that there was any agreement for the sale of said wool for more than it was worth, as a cover for usurious or extra interest. That the defendant then considered it

a fair price for the wool, and that it was the least price for which the defendant would have sold it. That said Bial Boynton proposed to the defendant to draw said note payable on demand, &c., and if defendant did not need the money, it might lay for some time. The defendant admitted the second trade as set forth, but expressly denied that said last mentioned wool was sold at any higher price than the same was worth; but that it was sold for rather less, or that the price of said wool was in any manner whatever, modified by any consideration connected with said note, or that said sale was in any way in consideration of, or connected with, any contract or agreement to extend the time of payment of said note, &c.

The testimony in the case did not differ materially with the answer of the defendant, and sufficiently appears in the opinion of the court.

*Kasson & Edmunds* and *Wires & Peck* for plaintiff.

1. The purchase of the wool in 1847, at that or any stipulated price, is a good consideration, whether above or below the market price; it was a good consideration, for a valid agreement to extend the time of payment on the balance of the note. Chit. on Con., 31–35.

2. The cases agree, that the surety may at any time, by bill in equity, compel the creditors to pursue the principal debtor, for his protection; but such a bill would not lie in this court, if he had by such an agreement, agreed to wait a year longer; the court would decline relief on the ground that the surety was discharged. *Rees* v. *Berrington,* 2 Ves. 542. *Hays* v. *Ward,* 4 J. C. R. 123 (132.) Nor is it material whether the money is due at the time of the contract to extend. *Ex parte Wilson,* 11 Ves. 410.— *Wright* v. *Simpson,* 6 Ves. 734.

3. The agreement to pay six per cent. interest for another year, is a sufficient consideration. *Bailey* v. *Adams,* 10 N. H. *Wheat.* v. *Kendall,* 6 N. H.

4. If it be urged that this court has no jurisdiction, or that the facts constitute a defense at law, we answer, (1.) That the act of the defendant in joining B. & H. Boynton in the suit at law, has precluded the orator from proving his defense. *Millen* v. *McKen,* 7 Paige, 451. (2.) This is a bill for discovery and relief, and if the

court has jurisdiction for one purpose, it will attain it for all purposes. *Beardsley* v. *Knight*, 10 Vt. 185.

*E. J. Phelps* and *A. Peck* for defendant.

1. This bill should be dismissed, as not presenting a case within the appropriate jurisdiction of a court of equity.

The suit at law on the note was first commenced. The defense set up by the orator was just as available in the suit at law, as in this court, and governed there by the same principles as here. The only ground, therefore, upon which he was entitled to come into this court at all, was to obtain a discovery from the *defendant*. Except for this prayer, the bill would have been dismissed on demurrer. That discovery has totally failed, inasmuch as the facts of the defense were totally and explicitly denied by the answer. And the result is that the jurisdiction of the court fails with it.

Though there is a class of cases in which courts of equity having obtained jurisdiction for the purpose of discovery, will retain it for relief, this will never be done —

(1.) When the discovery fails, or turns out to be a mere pretence, or,

(2.) Where the suit at law previously exists, and the defense, after the discovery is had, is not of a character peculiarly cognizable in equity, and is perfectly available at law. 2 Story's Eq. par. 691. *Russell* v. *Clark*, Ex. 7 Cranch, 69. Kirby, 185. 2 Barber & Harrington, Eq. Dig. 28, 29, 30. 1 Johns. Ch. Rep. 49, 466. 1 Story's Eq. par. 64–74 and notes. 1 Fonblanqui's Eq. b. 1, ch. 1, par. 3.

2. There is another view of the case that is fatal to the orator. The judgment in the suit at law is conclusive.

It is between the same parties, on the same note, and necessarily involving and concluding the same point now in controversy.

The only cases where a court of equity will relieve against a judgment, are,

(1.) Where the defense, from its peculiar character, was not available at law, or has accrued after the rendition of the judgment.

(2.) Where, though the defense would have been available at law, the party has by fraud, accident or mistake, been prevented from making it. 13 Vt. 477, and 15 do., 78. 1 Comstock, 274.

1 Johns. Ch. R. 49, and 6 do., 87.　7 Cranch. 69, and 6 do., 33. 5 Howard, 141.

The evidence of Bial and Henry Boynton which refers to the price paid for the wool in 1846, when the note was given, is wholly immaterial.　Because if the facts were as claimed, (which the answer wholly denies,) it could have no effect upon the present question.

As to the purchase of defendant's wool in 1847, at the time when it is claimed that the contract to extend was made, Bial Boynton, who transacted the whole business, states no definite or binding contract at all.　He says defendant first called for the whole amount of the note, but afterwards said if he could sell his wool, he could get along with so much less, and the balance might lie another year, as was originally contemplated.　Whereupon he bargained for, and purchased the wool, and paid for it.　He adds that he finds from the wool book that he paid one or two cents higher for the wool, than they were paying others at that time. But he does not state that this was so understood by defendant, nor that it constituted any consideration for the extension, or was connected with it in any way.　His testimony is entirely reconcilable with the answer.

From the whole evidence it is very apparent that the case is the common one of a note being tacitly permitted to lie after due, upon a mere understanding or expectation of the parties, as to when the money shall be called for, without any *binding* contract for a definite extension or any consideration for such contract.

The opinion of the court was delivered by

Isham, J.　The general object of this bill is for discovery and relief from the payment of a note executed by the orator, as surety for B. & H. Boynton, and on which the defendant has commenced a suit at law.　The ground upon which relief is sought, is an extension of the time for the payment of the note for one year, granted by the payee to the principals, without the knowledge or consent of the surety.　And that within that period, the Boyntons became insolvent.　An objection has been urged against this proceeding, involving the jurisdiction of this court over its subject matter; and it is insisted that an ample remedy may be had in the suit at law; and that a bill for relief cannot be sus-

tained where that remedy exists. And as the orator in this case, has failed in his discovery, and jurisdiction cannot be entertained on that ground, it is claimed that the bill should be dismissed.

The subject of equitable relief in behalf of sureties, is one of original jurisdiction in a court of chancery. The peculiar rights of a surety originated in, and are exclusively the growth of equity. Formerly it was held in several instances, that the remedy of the surety was only in equity, and could not be made available in courts of common law. But it is now held as a general rule, "that the liability of sureties is governed by the same principles "at law, as in equity." And probably with few exceptions, the same considerations which are sufficient in equity to discharge the surety, will be available for the same purpose at law. 2 Lead. Cases in Eq. 365, 386 in notes to *Rees* v. *Berrington.*

But "a court of equity will not send a party suing there, to a "court of law for the discharge or relief to which he is equally "entitled in equity." But will extend the same relief and exercise the same powers in behalf of sureties, that were exercised before jurisdiction of this subject was entertained at law. 2 Lead. Cases in Eq., pt. 2, 365. *Samuel* v. *Howorth*, 3 Mr. 278. *Mayhew* v. *Cricket*, 2 Swans. 185, and 529. *Eyre* v. *Everett*, 2 Russ. 382. 3 Hare, 567.

Justice Story remarks, Eq. Juris. Sec. 64, (i) "That the juris-"diction of courts of equity is not changed or affected by the "courts of law now entertaining jurisdiction in cases where they "formerly rejected it. They cannot enlarge or restrain the pow-"ers of a court of equity at their pleasure; for their jurisdiction "is of a permanent and fixed character, and being once legiti-"mately vested, it must remain until the Legislature shall abolish "or limit it." So in *Kemp* v. *Pryor*, 7 Ves. 249, Lord Eldon says, "I cannot hold that the jurisdiction of courts of equity is gone "merely because the courts of law have exercised an equitable "jurisdiction." In all such cases the party may seek his relief at the hands of either. Neither is it in the power of a creditor, by first commencing proceedings at law, to deprive the surety from seeking his relief in chancery. And where there has been no delay or negligence in seeking relief in equity, a court of chancery will exercise a controling power over the parties in their proceedings at law. The jurisdiction, therefore, of this court, in

the case under consideration, does not depend upon the fact that this bill is framed *for discovery* as well as relief. For it would be entertained for relief if no discovery had been asked, as being a matter within its original jurisdiction.

If this had been a bill for discovery, merely in aid of proceedings at law, if the discovery failed, the bill would be dismissed. But as this bill is for relief as well as discovery, and the prayer of the bill is for that relief which is within the original powers of a court of equity, though the discovery has failed, yet the bill will be entertained for relief. 1 Story Eq. Sec. 73, 74. *Russell* v. *Clark,* 7 Cranch. R. 69. Welf. Eq. plea, 132.

We see no reason for dismissing this bill for the want of a proper jurisdiction in this court over its subject matter.

The case is then resolved into those questions that arise upon its merits. It is not deemed important to recapitulate the facts stated in the bill and answer, nor the depositions of the witnesses, nor to enter into an investigation of the answer, to see whether it is as full as the stating or interrogating part of the bill requires, as there is not that contradiction in the testimony that renders it difficult to arrive at a proper result. The original note was executed June 24, 1846, by B. & H. Boynton as principals, and Jedediah Boynton and the plaintiff, as sureties. Its consideration was money lent and wool sold by the defendant to the Boyntons to the amount of one thousand dollars. When the note was executed, it was at first contemplated to take the same payable in one year, if certain security was obtained. As that could not be effected, the present note with the plaintiff as surety, was taken on demand. The object for taking the note payable in that manner is explained in the testimony of Bial Boynton. He testifies that when the note was given, it was agreed that the defendant should wait one year, at least, and probably longer, and that this note was made payable on demand at his suggestion, so that if the defendant became dissatisfied with the security, they would be obligated to exchange it.

The defendant states in his answer, that the note was executed in that manner by the suggestion of Boynton, so that if he was dissatisfied about the safety of the money, he might secure himself at any time, and that if he should not need the money, or become dissatisfied with the security, it might lie one, two, or more years.

This difference in phraseology cannot create much doubt as to the real intention of the parties at the time of the execution of that note. The conviction arising from the manner in which the business was done, and the object they had in view in making the note payable on demand, cannot well be overcome,—that it was so made, for the purpose, and with the right expressly reserved, to enable the defendant, as payee of the note, to call upon the makers for the money at any time he saw fit. There was unquestionably an expectation and understanding between them, that the note should lie for one year, and longer in case the defendant did not become dissatisfied with the security; but subject to the right, however, to call for the money, and prosecute the note at any moment he chose. This mutual understanding, and this right of the defendant, is to be inferred from a fair construction of the testimony of Bial Boynton, which was put into the case on the part of the orator. The defendant did permit the matter to lie during that year, and no complaint has been, or is now made of any matter arising out of that arrangement.

At or about the expiration of the first year, we have from the testimony in the case, that the defendant notified the Boyntons that he should want a payment on that note, of six hundred dollars for his personal use. An arrangement was finally effected, that if the Boyntons would pay the interest on the note, four hundred dollars on the principal, and pay him for his wool of that year, amounting to over two hundred dollars, the note might lie another year; as by that arrangement he would be possessed of means necessary for his use. This arrangement as stated by the parties and witnesses, bears the impress of a mutual effort to satisfy the wants of the defendant with as small a draft as possible on the principal of the note, and to carry into effect the understanding of the parties at the time the note was originally given. For thereby the defendant would be accommodated in the money he wanted, and the Boyntons, in obtaining time on the balance of the note as was contemplated, besides obtaining the wool which they wanted in their business. And in that negotiation we can only draw the inference that the parties intended that the balance of that note should remain another year, under the same arrangement and understanding that existed the year before. The defendant was to retain the same note payable on demand, with the

right of calling for the same at any time during the year, that he saw proper. What was said in relation to the delay for another year, was in view of the previous arrangement the year before, and to carry that understanding into effect, that the note might lie for one, two or more years, unless he became dissatisfied with the security, or wanted the money for his own use. In that event the right was reserved to call for and collect the amount due, whenever he deemed it necessary or important.

Under this view of the facts in the case, there is nothing in that arrangement of which the surety has reason to complain, or which entitles him to the relief he has sought. The right of the creditor has been reserved to collect at any time. The right of the surety also has been preserved; for had he felt insecure, he might have paid the note, and proceeded in his own name, to secure the debt, or petitioned the court of chancery for an order upon the defendant to proceed in the collection of the debt, of the principals; and the defendant, as holder of the note, might have complied with such requirement and order, if made without violating any contract or even conscientious obligations.

Sureties on a note are not discharged where time has been given, if there has been a reservation of the right to call for payment, or a right to proceed against the surety. 2 Lead. Cases in Eq. 360, 379, in notes to *Rees* v. *Berrington.* The case of *Nichols* v. *Norris,* 3 Barn. & Ad. R. 41, was a deed of composition which the creditor signed and thereby agreed to extend the time of payment, and receive payment by installments. But as he had expressly reserved his right to proceed at any time against the surety, the surety was held not discharged. In the case of *Melville* v. *Glendining,* 7 Taunt. R. 126, the plaintiff received bills of exchange from a defendant under an agreement that he should not be precluded from prosecuting while the bills were running. It was held, the surety was not thereby discharged. The same doctrine is sustained by the case of *Blackstone Bank* v. *Hill,* 10 Pick. R. 132. *Oxford Bank* v. *Lewis,* 8 Pick. R. 458. *Claggett* v. *Salmon,* 5 Gill and John. 314. *Bangs* v. *Strong,* 10 Paige, 11. 2 Lead. Cases in Eq., 360, 379, in notes to the case of *Rees* v. *Berrington.* We think, therefore, the plaintiff in this case has failed in showing such a contract as entitles him to the relief for which he has prayed.

The decree of the chancellor must be affirmed, with costs.