Supreme Lodge, Knights of Pythias, complainant-respondent,

*v.*

Lillian M. Rutzler, trustee, defendant-appellant.

[Submitted December 11th, 1916. Decided March 5th, 1917.]

1. In the case of a simple, or dry trust, *i. e.*, one in which the nature of the trust is not qualified by the settler, the *cestui que trust* has the right to be put in actual possession of the property.

2. In the case of a simple trust, if the *cestui que trust* die before taking possession, the right of possession in the case of personal property passes to the personal representative.

3. Where a trust of personal property appears to be completely and clearly declared by a writing to which the settler was a party, parol . evidence is inadmissible to vary or defeat such declaration.

4. The oral declarations of the holder of a benefit certificate in a mutual benefit association are inoperative to confer beneficiary rights therein, in the absence of any element of contract.

5. A death benefit certificate was payable to R. as trustee for L., who died after the holder of the certificate but before R. collected the money thereon.—*Held,* that the society properly paid the money to the administratrix of L., and was entitled to enjoin a suit at law by R. for the . money.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lewis, whose opinion is reported in *86 N. J. Eq. 327.*

*Mr. Frank G. Turner,* for the appellant.

*Messrs. McDermott & Enright,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The suit would be essentially one of interpleader except for the fact that complainant before filing its bill had already paid over the fund to one of the claimants and sought by the bill to be protected in that course, and to secure an injunction against the further prosecution of a suit at law by the other claimant.

The fund was the proceeds of a death benefit certificate issued by the complainant to Henry B. Lupton in his lifetime. At the time of his death it was payable to "his daughter Lillian M. Rutzler as trustee for his daughter Florence S. Lupton." Florence survived her father, but died before the money was paid, and this raised the question whether Lillian, as "trustee," was entitled to the money, or Florence's mother, Anna, who had taken out letters of administration of Florence's estate. The complainant finally paid the money to Anna, as administratrix, and, upon Lillian bringing an action at law against complainant on the certificate, filed this bill for an injunction, making the administratrix also a party. On final hearing an injunction was awarded and Lillian appeals.

We are of opinion that the court of chancery properly enjoined the suit at law. On the face of the certificate the trust was a "dry" or passive one. The characteristics of such a trust are so elementary that in all the range of our reported equity decisions I do not find, and counsel do not appear to have found, any direct adjudication of them. In *Cooper* v. *Cooper, 36 N. J. Eq. 121, 123,* they are described incidentally by Chancellor Runyon, quoting from *Lew. Trusts (8th ed. § 18) 21.* In *Rosenbaum* v. *Garrett, 57 N. J. Eq. 186,* the disposition of the fund turned on whether the trust was to be held active or passive; and Vice-Chancellor Reed (on *p. 194*) held that if the trust was passive (*i. e.,* if the trustee had no active duties to perform in respect to the trust estate) he could be called on to convey it to the *cestui que trust* or her appointee. See, also, *Perry Trusts § 18;* sections *520 et seq.,* and *39 Cyc. 30,* where the classification of trusts into "simple" and "special" is dealt with as synonymous with passive (or dry) and active. As the trustee of a passive trust, the sole duty of Lillian after her father's death and in the lifetime of the sister was to act as a conduit of the money from the complainant to Florence or her appointee. Upon the death of Florence, her personal representative became vested with the same *jus habendi* that Florence had in her lifetime; and, as the vice-chancellor very properly said, if the complainant had paid the money over to the trustee, there was nothing for the trustee to do but to turn it over to the administratrix. As the complainant wished to settle the question who was the beneficial owner of the fund as distinct from the purely legal owner, the litigation was properly transferred into the court of chancery by filing the bill, and properly retained there for the settlement of this equitable question; and the award of an injunction against proceeding further with the action at law was a remedy incidental to the nature of the case and the jurisdiction of the court.

It is urged, however, that the trust was not wholly as expressed in the benefit certificate, but that in the contingency of Florence's death even after his own, it was intended by her father that it should go to the two sisters, Lillian and Emily, in equal shares.

The documentary proof shows that the first benefit certificate was payable to Lillian and Emily equally. This was in 1899. In January, 1906, deceased applied in conformity with the rules, for a change of beneficiary, by surrendering the certificate, and requesting a new one payable to "Lillian M. Rutzler (daughter), as trustee for Florence S. Lupton (daughter)." This was done, and the new certificate issued under date of February 17th, 1906. Florence was then thirteen years old, and the desirability of a trustee to hold legal title to the money in case of her death was obvious. She was eighteen when her father died in February, 1911, and still disqualified to deal legally with her property.

The only evidence in support of the claim of the sisters is their own oral testimony. We think it was not competent to contradict or vary the express trust; that if competent and believed, it was ineffective to impress a trust on the fund but merely indicated a testamentary intention not legally executed; and that in any case when read in connection with the other conceded facts, it does not indicate that the father contemplated the money passing to Lillian and Emily except in the event of Florence's death before his own.

As to the competency of the testimony (which was duly objected to), we take the rule to be that, while in cases of trusts of personal property to which the statute of frauds does not apply, they may be proved by parol, and, if indicated by a writing, the writing may be supplemented by parol proof where it is vague or incomplete (*Eaton* v. *Cook, 25 N. J. Eq. 55*), yet, if there is a writing complete on its face, it cannot be varied or contradicted by oral evidence. *Perry Trusts* § *76; Peer* v. *Peer, 11 N. J. Eq. 432, 440.* The trust declared in the benefit certificate was complete and specific, and needed neither supplement nor explanation.

Secondly, the claim rests on alleged conversations of deceased with Lillian and Emily, wherein, as they testified, he secured their consent to a change of beneficiary with the understanding that in the event of Florence's death, the money would go to them. There is nothing to show that their consent was requisite; the papers, so far as printed, indicate the contrary. They had no vested right in the fund at that time. *Tepper* v. *Royal Arca-*

*num, 59 N. J. Eq. 321,* reversed on another ground, *61 N. J. Eq. 638; Spengler* v. *Spengler, 65 N. J. Eq. 176.* Hence, their "consent" involved no surrender of right, was inoperative as a consideration, and the declaration by deceased that the money should go to them in a certain contingency was no more than a testamentary declaration not in compliance with the statute of wills.

Lastly, the testimony itself is unsatisfactory. The contingency, as stated by the sister Emily (Mrs. Haws), is "that at any time anything should happen whereby Florence should not get this money, that it should revert to my sister and myself as the policy had originally stood." Mrs. Rutzler testified that her father thought that as she and Mrs. Haws were married (they were not married when the first certificate was issued), it was fair to look after the unmarried sister, and therefore was

"changed to her with me as trustee to look after the fund in case anything happened to my father.

"Q. Now, in case anything happened to Florence, did your father give you any instructions as to what you were to do with this money that you would receive as trustee? * * *

"A. It was to revert back to my sister and myself (in) equal shares."

We agree with the learned vice-chancellor that what the father intended, if this testimony be taken as true, was that the money should go to the two sisters if Florence predeceased him. It would be strange, indeed, if the death of Florence, after she became beneficial owner of the fund, and on coming of age entitled to collect it of Lillian, should defeat the trust as expressed in writing. The evidence must be clear and explicit. *Perry Trusts* § 77. This evidence is neither, on the specific question.

We conclude, therefore, that the money was lawfully paid to the administratrix, and that the two sisters have no title thereto except as next of kin of Florence. This makes it unnecessary to discuss the part of the decree below which declares the complainant subrogated to the rights of the administratrix to claim from Lillian as trustee all moneys lawfully expended for last sickness, funeral expenses and other charges for which the estate of Florence was liable. The decree below should be modified so as to adjudge that on the death of Florence her personal rep-

resentative was entitled to have and receive as such the entire fund from the trustee upon its receipt from the complainant, and that the payment directly from complainant to the administratrix operated to discharge the trustee of and from all further obligation in respect to said trust.

Costs were properly awarded to complainant below. There was only one lawful purpose for which the trustee could have received the money after Florence's death, and that was to pay it to her administratrix. Not having been done directly, an attempt by the trustee to make the complainant pay it over again was merely litigious and futile.

· With the modification outlined above, the decree of the court of chancery will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER—13.

*For reversal*—None.