AMERICAN SURETY COMPANY *v.* CREAMERY COMMISSIONERS ET AL.

May Term, 1924.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed January 8, 1925.

*Equity Has Same Jurisdiction in Behalf of Sureties as Before Jurisdiction Entertained at Law—Release of Surety by Transfer of Debtor's Property and Extending Time of Payment—Right of Surety to Restrain Unjustifiable and Vexatious Proceeding at Law on Bond—Creditors Receiving More Than Amount of Bond from Surety's Indemnitors Cannot Enforce Penalty—Parties in Equity.*

1. The subject of equitable relief in behalf of sureties being one of original jurisdiction in chancery, a court of equity will extend the same relief and exercise the same powers in behalf of sureties that were exercised before jurisdiction of the subject was entertained at law, and a creditor cannot deprive surety of such relief in chancery by first commencing proceedings at law.

2. Where, by an arrangement between corporation debtor and creditors, without knowledge or consent of surety, the bulk of debtor's property was transferred to another corporation and placed beyond the reach of creditors, and extension of time of payment was granted, without reservation of right to call for payment or to proceed against surety, the surety was thereby discharged from liability.

3. Under such circumstances, surety is entitled to relief by injunction to restrain creditor from proceeding at law against him to recover on bond, on ground that suit is unjustifiable and vexatious, and fact that surety is compensated surety does not affect right to such relief.

4. Where creditors have received and accepted from persons indemnifying surety more than the amount of bond, in substitution for surety's liability thereon, they cannot enforce penalty of bond, whether arrangement entered into between debtor and creditors amounted to a discharge of the debtor or otherwise.

5. Where creditors were the real parties in interest in action at law brought against surety on bond by creamery commissioners, such creditors were properly joined with the creamery commissioners in suit in equity by surety to enjoin any proceeding at law against it on account of execution of such bond.

6. In chancery, all parties interested in the subject-matter of suit should regularly be made parties, either as plaintiffs or defendants.

APPEAL IN CHANCERY. Heard on bill and amendments thereto, answers and amendments thereto, replication, findings of fact by chancellor, and motion to dismiss, after the June Term, 1923, Windsor County, *Chase,* Chancellor, presiding. Judgment for plaintiff. The defendants appealed. The opinion states the case. *Affirmed and remanded.*

*Roland E. Stevens* for the defendants.

*Stickney, Sargent & Skeels* and *Frank K. Foster* for the plaintiffs.

TAYLOR, J. In February, 1912, the Crescent Creamery Company, a Maine corporation, applied for registration and a certifi-

cate authorizing it to engage in business in this State. Pursuant to the statute then in force (P. S. Ch. 211) the Creamery Company was required to and did execute and deliver to the Commissioners of Foreign Creameries a bond in the sum of five thousand dollars, conditioned that the Creamery Company should "well and truly pay and discharge all sums of money recovered against it." This bond was executed by the plaintiff as surety. Thereupon, the Commissioners granted the corporation a license to do business in the State until April 1, 1913. The Company conducted business until about August 1, 1912, when it became unable to pay its debts and ceased doing business. It then owed its creditors within the State about $15,000, and was indebted outside the State to a large amount. It had within the State a considerable amount of property consisting mainly of creamery equipment, worth about $15,000 to a going concern, but of comparatively little value otherwise. In this situation practically all the Vermont creditors executed powers of attorney either to Roland E. Stevens or Rufus E. Brown, authorizing them to settle their respective claims out of court. Later the whole matter was turned over to Mr. Stevens, who, as such attorney, on December 13, 1912, executed an agreement with the Creamery Company, pursuant to which the affairs of the Company were thereafter conducted. Some of the creditors had previously petitioned to have the Company adjudged bankrupt. Their petition was later dismissed in accordance with the agreement.

A new corporation, called the Crescent Produce Company, was organized under the laws of this State and took over all the assets of the Creamery Company except its cash and choses in action. Mr. Stevens was the clerk, treasurer, and one of the directors of this corporation, and controlled its affairs from the time it was organized. The new corporation never did any business, as Mr. Stevens was unable to carry on the business contemplated without the assistance of one Willard, the president of the Creamery Company, who failed to furnish promised assistance. Willard and a Mr. Haynes, who were both interested in the Creamery Company when the bond in question was procured, were indemnitors of the plaintiff on account of the bond. Their agreement was to protect the plaintiff from all damage, expenses, and costs which it might incur by reason of becoming surety for the Creamery Company on the bond. In order to carry out their agreement to pay to the creditors of the Creamery

Company in substitution for the liability of the plaintiff as surety on the bond and to make the cash payment agreed upon, they raised by personal effort and paid over to the creditors nearly $10,000. Cash to the amount of one-third of the claims of the creditors represented by Mr. Stevens was paid to him and by him distributed among such creditors. The balance due on the claims was ascertained to be $9,263.01 and the note of the Produce Company for that amount payable in four annual installments was given to Mr. Stevens as trustee. As security for the payment of this note, stock of the Produce Company equal at par to the amount of the note was issued to Mr. Stevens as trustee and is still so held by him, except in the case of a few creditors who insisted upon being paid in full. The method employed to get the money to satisfy such creditors was this: The stock representing the balance of their claims was issued to them, then sold, the stock assigned to the purchaser, and the proceeds paid to the creditor.

The property of the corporation in this State was, with the knowledge and consent of Mr. Stevens, mortgaged to a bank in Maine as security for a note of $3,500 given to raise a part of the cash paid to the creditors and was later removed from the State by virtue of this mortgage. The stock of the Produce Company turned out to be worthless. When Mr. Stevens acting for the creditors, accepted the settlement outlined above, agreed to have the petition in bankruptcy dismissed, and allowed the assets of the Creamery Company to be placed beyond the reach of creditors, he had reason to and did believe that they would receive more in that way than they would if the bankruptcy proceedings were persisted in and the assets of the Company together with the amount of the plaintiff's bond, were distributed in that way. He was misled, however, by the representations and promises of Willard, and the settlement did not prove to be as favorable as he expected. The plaintiff had nothing to do about making the agreement of December 13, 1912, nor with the settlement made thereunder, and did nothing to mislead Mr. Stevens. It had offered on January 10, 1913, while the settlement was being perfected, to pay the amount of the bond into court for the benefit of creditors. No such payment was made, nor does it appear that it was then desired by any of the creditors. There has been no settlement or satisfaction of the claims of creditors represented by Mr. Stevens other than the

payment of one-third in cash and the giving of the note and stock representing in amount the balance of the indebtedness. It was stipulated in the agreement that the note to be issued for the unpaid balance of the claims should be received as evidence of indebtedness only and not considered as payment of the claims until the note was fully paid. It is stated in the answer of the Creamery Commissioners and Mr. Stevens that the sole purpose of the written agreement between Mr. Stevens and the Creamery Company was to extend the time of payment of the Company's indebtedness in Vermont and to enable it to continue in business by utilizing its machinery and equipment instead of disposing of it at a forced sale at a great financial sacrifice.

After this settlement some of the creditors began to make the claim that they were entitled to collect from the plaintiff the amount of the bond, and in July, 1917, fifty of the creditors joined in the execution of a power of attorney to Theo. E. Hopkins of Burlington authorizing him to prosecute their claims against the Creamery Company to judgment and to enforce the collection of the bond from the plaintiff, undertaking thereby to revoke the power of attorney which they had previously given to Mr. Stevens. Notwithstanding notice from Mr. Hopkins of this action, Mr. Stevens as trustee on August 18, 1917, brought suit against the Creamery Company on account of the unpaid balance due the Vermont creditors and on January 9, 1918, took a default judgment for such balance with interest and costs. Execution issued on this judgment was returned unsatisfied. At the same time Mr. Hopkins brought separate suits in behalf of the individual creditors who had given him authority to act for them and between August 27, 1917, and January 16, 1918, had recovered default judgments in such suits for the amount of the respective claims. All of such claims were included in the settlement effected by Mr. Stevens, and they were also included in and a part of the pretended demand upon which Mr. Stevens as trustee had taken judgment. The plaintiff had no knowledge of any of these proceedings until after October 19, 1918, when it was served with the writ in a suit instituted by Mr. Stevens in the names of the then Creamery Commissioners to enforce its claimed liability on the bond. The suit was predicated upon the failure of the Creamery Company to pay the several judgments referred to above as a breach of the condition of the bond.

While this suit was pending in Windsor county court the plaintiff brought this action in chancery, seeking a disclosure respecting the transactions between the Creamery Company and its creditors and the organization and issue of stock of the Produce Company and praying for an injunction to restrain the prosecution of the pending suit at law or any other proceeding against the plaintiff based upon the execution of the bond as surety. The Creamery Commissioners, Mr. Stevens both individually and as trustee, and the creditors who have secured individual judgments against the Creamery Company were joined as defendants.

The creditors represented by Mr. Hopkins admit that the demands recovered for by them in their individual judgments are included in the pretended demand upon which Mr. Stevens obtained judgment as trustee, but insist that they alone are entitled to the benefit of the bond. They claim that Mr. Stevens had no right to prosecute the note given by the Produce Company on their behalf; that to obtain the benefit of the bond creditors should have brought suit individually against the Creamery Company upon the balance of its debt to them; that they could not lawfully obtain judgment jointly against the Creamery Company on the note of the Produce Company; and that as a result the Stevens' judgment was null and void.

The foregoing facts are either admitted in the pleadings or are established by the findings. There was a trial on the issues of fact before the chancellor. After his findings had been filed, the defendants moved that the bill be dismissed on the ground that the plaintiff was not without adequate remedy at law as alleged in the bill, but on the contrary had a full, complete, and adequate remedy at law. At the final hearing upon the pleadings, finding of facts, and motion to dismiss, the plaintiff had a decree according to the prayer of the bill for an injunction. From this decree all of the defendants have appealed.

[1] Reasons for sustaining the decree are not lacking and an extended argument is unnecessary. The law of this case is pretty much all contained in *Viele* v. *Hoag*, 24 Vt. 46. The jurisdictional objection that the plaintiff has an adequate remedy at law is plainly untenable. The subject of equitable relief in behalf of sureties is one of original jurisdiction in a court of chancery. The peculiar rights of a surety originated in, and

are exclusively the growth of equity. While it is now held, as a general rule, that the liability of sureties is governed by the same principles at law as in equity, a party suing in a court of equity will not for that reason be sent to a court of law for the relief to which he is entitled. A court of equity will extend the same relief and exercise the same powers in behalf of sureties that were exercised before jurisdiction of the subject was entertained at law. See 1 Story's Eq. Jur. §§ 64 (1), 496. Nor can the creditor deprive the surety from seeking his relief in chancery by first commencing proceedings at law. The doctrine of *Viele* v. *Hoag* is reaffirmed in *International Paper Co.* v. *Bellows Falls Canal Co.*, 91 Vt. 350, 366, 100 Atl. 684, and is referred to with approval in *Weed* v. *Hunt*, 81 Vt. 302, 307, 70 Atl. 564. It follows that the chancellor properly overruled the defendants' motion to dismiss.

[2, 3]   The questions raised on the merits of the case must also be ruled against the defendants. It appears from the record that the creditors for whose benefit the bond was given, acting through their authorized agent, without the knowledge or consent of the plaintiff, entered into an arrangement with the Creamery Company which, to say the least, extended the time of payment of their claims for a period of years. The extension of time was granted without any reservation of the right to call for payment or to proceed against the surety. Besides, under the arrangement the bulk of the debtor's property was transferred to another corporation and placed beyond the reach of creditors to the manifest prejudice of the plaintiff as surety for the Creamery Company. The effect of this arrangement was to discharge the plaintiff from its liability as surety on the bond. See 1 Story's Eq. Jur. §§ 324-327. Under such circumstances, the surety is entitled to relief by way of injunction restraining the creditor from proceeding at law against him to recover on the bond, on the ground that the suit is unjustifiable and vexatious. 2 Story's Eq. Jur. §§ 883, 904. The author says of this remedy: "Indeed, there can scarcely be found an end to the enumeration of cases in which vexatious suits of this sort have been suppressed by injunctions when there was no redress at law and yet when, upon the principles of justice, the party was entitled to complete protection against such litigation." That the plaintiff is a compensated surety, if such is the fact, would not change the result, for the necessary prejudice to bring

the case within the rule announced in *City of Montpelier* v. *National Surety Co.*, 97 Vt. 111, 121, 122 Atl. 484, 33 A. L. R. 489, sufficiently appears.

[4]    If further warrant for invoking relief in equity were needed, it is to be found in the fact that the creditors have already received the full benefit of the protection guaranteed by the bond.    It fairly appears that Haynes and Willard, who, as we have seen, were under contract to indemnify the plaintiff against loss on account of the bond, paid the creditors the amount of the bond and more in substitution for the liability of the plaintiff thereon.    It does not matter whether the arrangement which the chancellor characterized as a settlement did or did not amount to a discharge of the Creamery Company, and so of the surety, as claimed by the plaintiff.    It certainly would be inequitable in the circumstances for the creditors to accept the adjustment through which they received the benefit of their security, and later undertake to enforce the penalty of the bond.

[5, 6]    It is claimed that the bill should be dismissed as to all the defendants except the Creamery Commissioners on the ground that they are improperly joined as parties.    While the pending suit on the bond is brought in the name of the Creamery Commissioners alone, they are merely nominal parties.    The creditors are the real parties in interest and the suit was being prosecuted in their behalf and under their direction.    The rule in chancery is .that all parties interested in the subject-matter of the suit should regularly be made parties, either as plaintiffs or defendants.    *McConnell* v. *McConnell*, 11 Vt. 290.    See *Day* v. *Cummings*, 19 Vt. 496.    The bill is brought not only to enjoin the pending suit at law, but any other proceeding against the plaintiff on account of the execution of the bond, and the decree gave the full relief asked for.    The result reached makes it unnecessary to consider other questions discussed in the defendants' brief.

*Decree affirmed and cause remanded.*