HAROLD O'BRIEN, ADMR. *v.* ROSANA COOK HOLDEN ET AL.

February Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 4, 1932.

340

*Marvelle C. Webber* for the defendant, Rosana C. Holden.

*Lawrence, Stafford & O'Brien* for the plaintiff.

POWERS, C. J. This suit was commenced as an action at law brought by the administrator of Mary A. K. Cook against Rosana C. Holden to recover certain unpaid items of income which had accrued under a trust created by the intestate. The defendant therein obtained an order that the action be amended into a suit in chancery and transferred to that court, in accordance with the provisions of the Practice Act. This order having been complied with, the plaintiff filed a complaint which materially broadened the scope of the original complaint—though it involved only the same trust—and brought in several new parties defendant, all of whom were interested in the outcome of the case as covered by the new complaint. It will suffice for present purposes, to refer only to the pleadings filed by Rosana C. Holden. She demurred to the complaint, and filed a motion to dismiss the same. She also filed motions to strike out

certain paragraphs of the bill and to strike off certain parties defendant. Speaking broadly, these efforts were all directed to the same end. They were predicated upon the claim that the case made by the new complaint involved an entirely new case, one in no way involved in the action at law, and that it introduced new parties and interests. All this, it is insisted, is irregular and not permissible.

The chancellor disposed of the questions so raised by rulings adverse to Mrs. Holden, to which she excepted. He then heard the evidence, found that Mrs. Holden held certain securities in trust, and made a preliminary decree ordering her to account. She appealed.

When Mrs. Holden's application to the law court was granted, the case passed into the court of chancery, and the moment it arrived there it became in all respects as much a suit in chancery as it would have been if it had originated as such. Any changes in form or substance allowable in chancery cases could be made in or to it. It came under the familiar and well-established rule that amendments in chancery are to be liberally allowed "as to parties, prayer for relief, and as to substance germane to and in enlargement or explanatory of the substantial parts of the bill." The new matter must be germane to the subject-matter of the original bill, and not wholly foreign to it; must be consistent with and not repugnant to it; and must be in enlargement of the original bill, and not an entirely new bill.

So far as the question of new parties is concerned, it is enough to say that the rule in chancery is that all parties interested in the subject-matter of the suit are to be made parties, either as plaintiffs or defendants. *American Surety Co.* v. *Creamery Commissioners et al.*, 98 Vt. 313, 320, 127 Atl. 289. So the change in parties was not only permissible, but necessary.

The subject-matter of the bill in its present form is the same as that of the law case. Both suits are based upon the same trust. That the plaintiff now seeks more than he did then, that the rights of third parties can now be considered and disposed of, do not make this a "new bill" within the meaning of the rule of amendments in chancery. The new features are all germane to the subject-matter of the original suit, consistent with it, and in extension of it. It is for the benefit of all con-

cerned to have all matters growing out of the Mary Cook trust here determined. To allow this to be done, is merely to apply the familiar rule that when equity takes jurisdiction for one purpose, it will retain it until complete relief is granted. *Holton* v. *Hassam*, 94 Vt. 324, 328, 111 Atl. 389, and cases cited.

In holding, as we do, that the objections here made are without merit, we give effect to the provision of the Practice Act included in G. L. 1797 according to its spirit and purpose, as reflected in our cases. *Holton* v. *Hassam, supra,* was brought as an action of trespass for treble damages against Hassam, alone. At the plaintiff's request, it was amended into equity, and another party was brought in. The Court held that it was properly transferred into equity, and one ground of equitable jurisdiction warranted it.

*Nelson* v. *Nelson,* 97 Vt. 50, 122 Atl. 490, 495, was an action at law wherein it was considered by this Court that the rights of the parties could not be adjudicated justly and equitably until certain partnership accountings were had. So the case was reversed and remanded so that it could be amended into a suit in equity, where ''brushing technicalities aside, all questions involved may be considered and determined as their substance shall, in good conscience and fair dealing, require.''

██ ██ The plaintiff claimed, and gave evidence tending to show, that through a certain chancery suit Mary A. K. Cook became entitled to receive from the trustees of her husband's estate the sum of $112,500. That she accepted payment of this sum in stocks and bonds (a list of which was included in Exhibit D), together with $762.51 in cash. This exhibit provided that the stocks listed should be equally divided between Mrs. Cook's seven children. It contained this further provision: ''I further direct that the said bonds be sold and reinvested in trust for my benefit, except that I direct that from the sale of said bonds there shall first be paid to Geo. C. Cook the sum of one thousand dollars, and to Ralph C. K. Cook the sum of one thousand dollars.'' It is this provision that is of importance here. Subject to the exception of the defendant Holden, the plaintiff was allowed to show by parol that at the time Exhibit B, which was dated August 2, 1915, signed by Mary A. K. Cook, and witnessed by Ernest E. Moore, was executed, Mrs. Cook orally directed that at her decease the corpus of the trust fund should be equally

divided among her seven children, and that, in the event of the death of any child or children, their children should take the share of such deceased parent. What was done, then, was to allow a written declaration of trust, which was apparently complete and free from ambiguity, to be supplemented by parol evidence in such a way as to control the final disposition of the corpus in a way different from and inconsistent with the writing itself. That the provision testified to by Judge Moore so resulted is apparent. By the written declaration, the trust was for the sole benefit of Mrs. Cook. The corpus and the income were to be so devoted. This results from the fact that no provision is made therein for the disposition of the corpus to any other person or persons. Yet the trust does not fail. The whole beneficial interest belonged to Mrs. Cook under the writing, and at her decease the corpus became a part of her estate. That such a trust is valid is established. *Williams* v. *Haskins' Estate,* 66 Vt. 377, 383, 29 Atl. 371.

The oral testimony entirely changed the disposition of the trust estate at Mrs. Cook's decease. It required the trustee to make a division of the trust estate among Mrs. Cook's children, and it would never become a part of her estate. Whether the practical and final effect would be any different, is a question not, at the moment, for consideration. We are now dealing with the quality of the ruling of the trial court.

The parol evidence was improperly admitted. It comes within the rule thus expressed by Dean Wigmore: ''When a jural act is embodied in a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their act,'' 5 Wig. Ev. § 2425—which is nothing more or less than the familiar parol evidence rule, as we know it, regarbed in more expressive and scholarly terms, perhaps. The author points out that this is something more than a rule of evidence, and asserts that it is a rule of substantive law. There is much good sense in this view, but we seem to have been content to treat the question of admissibility as one of evidence. Our rule may be stated thus: An instrument which is apparently complete and unambiguous cannot be qualified by parol evidence; and this applies as well to its legal intendments as to its express terms. *Hayden* v. *Hoadley,* 94 Vt. 345, 348, 111 Atl. 343. In that case, the written

contract was silent as to when certain repairs were to be made, which fact resulted in an implied provision that they were to be made within a reasonable time. It was held that parol evidence was not admissible to show that it was at the time agreed that the repairs were to be made by a specified date, as that would be to allow the legal effect of the written contract to be controlled by oral evidence. So it is here. The legal effect of the written declaration of trust was wholly changed in a vital respect by the oral evidence received. That the rule applies to declarations of trust cannot be doubted. 1 Perry, Trusts, § 76; *Chadwick* v. *Perkins*, 3 Me. (3 Greenl.) 399, 404; *Gale* v. *Sulloway*, 62 N. H. 57, 60; *Baykin* v. *Pace's Exr.*, 64 Ala. 68, 73; *Supreme Lodge, K. P.* v. *Rutzler*, 87 N. J. Eq. 342, 100 Atl. 189; *Englestein* v. *Mintz*, 345 Ill. 48, 177 N. E. 750, 26 R. C. L. 1202. It does not take much to create a voluntary trust. When, as here, the property included is all personalty, a trust may be established without a writing. No particular formality of expression is required. It is all a question of intent on the part of the declarant. *Porter* v. *Bank of Rutland*, 19 Vt. 410, 419; *Williams* v. *Haskins' Estate*, 66 Vt. 378, 383, 29 Atl. 371; *St. Albans* v. *Avery*, 95 Vt. 249, 253, 114 Atl. 31; *Straw* v. *Mower*, 99 Vt. 56, 60, 130 Atl. 687. On the question of intent, aid may be afforded by parol evidence, as was the case in the Porter Case above cited. But this does not imply that such evidence can be used for the purpose of modifying or extending the declaration itself. It is necessary that this should show with sufficient certainty the objects and nature of the trust. *Salisbury* v. *Clarke*, 61 Vt. 453, 459, 17 Atl. 135. This, the writing before us does, though it does not prescribe the manner in which the property is to be handled, or how it is to be applied to Mrs. Cook's benefit. These matters are so left that it is for the court, on proper application, to work them out. It is not necessary that the trustee be designated in the writing or named by any simultaneous or subsequent appointment in writing. *Porter* v. *Bank of Rutland*, *supra*. It is not even necessary to the validity of the trust that a trustee be designated at all by the declarant. The court of chancery will not allow a trust to fail for want of a trustee. *Porter* v. *Bank of Rutland*, *supra*, 19 Vt. at page 420; *Montpelier* v. *East Montpelier*, 29 Vt. 12, 22, 67 A. D. 748. The appointment of one as trustee may be implied from the course

of dealing with the trust property, when it is with the knowledge and acquiescence of the declarant. *Ladies' Benevolent Society* v. *Orrell,* 195 N. C. 405, 142 S. E. 493, 495.

When a trust is once established, it is ordinarily irrevocable unless power to that end is reserved in the declaration. *Barber* v. *Thompson,* 49 Vt. 213, 226; *Sargent* v. *Baldwin,* 60 Vt. 17, 26, 13 Atl. 854; *Howard* v. *Howard,* 60 Vt. 362, 363, 14 Atl. 702; *Conn. River Sav. Bank* v. *Albee's Estate,* 64 Vt. 571, 575, 25 Atl. 487, 33 A. S. R. 944; *Atkins* v. *Atkins,* 70 Vt. 565, 567, 41 Atl. 503. But where a trust is created for the sole benefit of the person creating it, that person may revoke it or amend it, with or without the consent of the trustee. Thus, one Lucinda Tarbell delivered to E. A. and Alonzo Button $300 which they held to her use. It was deposited in a certain bank in their name. Some time after this, Lucinda gave the surviving trustee a writing wherein she directed the disposition of the money at her decease, in case she did not herself use it. It was held that prior to this writing, Lucinda could have used or disposed of the fund in any way she chose, and that the trust was a simple or dry one. *Wade, Admr.* v. *Button,* 72 Vt. 136, 137, 47 Atl. 406. It might have been more accurate to have said that the trust would become such when she called for the fund. There would then have been nothing for the trustee to do but pay it over to her. Such was the situation in *Atkins* v. *Atkins, supra,* relied upon by the Court in the Button Case. However this may be, it is clear enough that when one creates a trust for his sole benefit, he may recall the legal title at any time and for any purpose. So here, Mrs. Cook, being the sole beneficiary of her own trust, was entitled not only to the income of the fund, but she could at any time demand the return of the securities in cancellation of the trust, and the trustee could not insist upon its continuance. 2 Perry, §§ 520, 920; *Fidelity & Trust Co.* v. *Gwynn,* 206 Ky. 823, 268 S. W. 537, 38 A. L. R. 937, 940, and note, page 965; *Banfield* v. *Whipple,* 10 Allen (Mass.) 127, 87 A. D. 618. Indeed, it is settled that when all persons concerned in a trust, be they few or many, are alive and *sui juris,* they may revoke or modify it. 26 R. C. L. 1211; *Mathews* v. *Thompson,* 186 Mass. 14, 71 N. E. 93, 94, 66 L. R. A. 421, 104 A. S. R. 550; *Short* v. *Wilson,* 13 Johns. (N. Y.) 33. If, then, Mrs. Cook gave the securities in question to Mrs.

348

Holden as the latter testified, this would have amounted to an implied revocation of the trust, and establish the legal title to them in the latter as owner. This, of course, is on the assumption that the declaration of trust is to stand as written. But on the question of this gift of the securities, Mrs. Holden fails in her proof. The findings are silent as to any such gift. Nor can we say that the chancellor was bound to make such a finding. Though Mrs. Holden testified to such a gift and was corroborated to some extent, her appearance on the stand as shown by the transcript and the circumstances disclosed were such as to warrant the chancellor's attitude toward her as a witness and amply justified his conclusion as evidenced by his failure to find a gift to her.

We have now to consider whether the error in admitting the parol evidence was so prejudicial as to require a reversal. In the consideration of this question, we should not overlook the fact that the chancellor says, in effect, that his findings are not at all predicated upon evidence received under objection and exception. But this statement, which otherwise we would accept as its face value, *Foster's Admr.* v. *Burton,* 62 Vt. 239, 241, 20 Atl. 236; *Platt's Admx.* v. *Shields,* 96 Vt. 257, 273, 119 Atl. 520, cannot be applied to the finding that it was a part of the declaration of trust that the trustee, at the death of Mrs. Cook, should divide the corpus between the Cook children. For, rejecting the oral evidence, there would be nothing left on which that finding could be predicated. If that finding was to stand, each of these children would get from the trustee one-seventh of the amount that the accounting shows to be due from her. If that finding is rejected, each child gets from the administrator, one-seventh of that amount, less its share of administration expenses. We have no way to determine what those expenses may amount to, but it appears that this case, in one form or another, has been in court nearly two years, and from our general knowledge of such things, which we may make use of (see *Platt's Admx.* v. *Shields,* 96 Vt. 257, 259, 119 Atl. 520), we can safely say that the administration charges will be sufficiently large to affect the amount of the individual shares of the trust fund. So Mrs. Holden herself, with no gift established, would get a larger allotment of the corpus under the finding based on the inadmissible evidence than she will without that

finding. She would benefit by the error. Then, too, the decree will not be disturbed on account of a finding erroneously made if it can be rejected without affecting the legality of the decree. Such a finding, though immaterial, does not prejudice. *Waterman* v. *Moody*, 92 Vt. 218, 236, 103 Atl. 325; *Crampton* v. *Lamonda*, 95 Vt. 160, 164, 114 Atl. 42; *Platt's Admx.* v. *Shields*, 96 Vt. 257, 268, 119 Atl. 520; *Susenna* v. *Recor*, 103 Vt. 447, 156 Atl. 416. The finding here involved can be rejected without affecting the validity of the decree rendered. That decree established the trust, specified the securities that belonged to it, and ordered Mrs. Holden to account. That is as far as it went. So it can stand though the finding about what was to be done at Mrs. Cook's decease is eliminated. The error under discussion was harmless. It will be well to say, in passing, that in reaching our conclusion that the parol evidence was erroneously admitted, we give no heed to the statement of Judge Davis, in *Porter* v. *Bank of Rutland, supra,* to the effect that trust embracing personal property only may be created partly in writing and partly by parol. If this statement means anything more than that the appointment of a trustee under a written declaration of trust may be made by parol, as is elsewhere said in the opinion, and is intended to assert that some of the terms of the trust may be in writing and others may rest in parol, it is disapproved. It is unsupported by reason or authority. The safety and integrity of written trusts would be seriously imperiled by such a rule. Nor can Mrs. Holden's receipts be at all relied upon as evidence of the establishment of a trust of the terms therein recited. These receipts were evidence that the securities therein named belonged to Mrs. Cook's trust. But only Mrs. Cook could specify the terms of that trust. No one else could by agreement, admission, or otherwise add to or take from it. So far as the terms of the trust are concerned, the receipts were inadmissible, and could not be used to modify the terms of the writing executed by Mrs. Cook on August 2, 1915. What we have hereinbefore said about the appointment of a trustee applies with equal force to the substitution of Mrs. Holden in place of Mrs. Moore. The chancellor finds that this change was made under an agreement between Mrs. Cook and the children. This finding is well supported by the evidence, though as to one or more of the children the agreement was more implied than express. But all actually

agreed or acquiesced. Mrs. Holden knew and assented to all that was done in this connection. She accepted and receipted for the securities, knowing at the time that the receipts purported to recite the terms of the trust.

We have made no effort herein to follow the voluminous brief of Mrs. Holden, or to make specific reference to many of the great number of exceptions saved by her. To do so would require this opinion to be unduly extended, and, on account of the character of many of the exceptions would serve no useful purpose. We have considered every point raised, and have treated all the questions that seem to merit discussion.

*Decree affirmed, and cause remanded.*